**OLIPHANT FINANCIAL,
LLC, Appellant,**

v.

**Julio GALAVIZ, Appellee.**

No. 05–07–01730–CV.

Court of Appeals of Texas,
Dallas.

Oct. 26, 2009.

voir dire, closing arguments, and post- judgment proceedings.

Andrew E. Lemanski, Houston, TX, for Appellant.

Julio Galaviz, Irving, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

Oliphant Financial, LLC appeals the dismissal for want of prosecution of its breach of contract suit against Julio Galaviz. In a single issue, Oliphant asserts the trial court erred when it dismissed this case for want of prosecution, arguing it was entitled to a default judgment on liquidated damages and attorney's fees because the judgment was supported by the pleadings and attached documents and by deemed admissions. Galaviz did not answer the suit or file a brief in this Court. For the reasons set forth below, we reverse the trial court's dismissal order and remand this case to the trial court with instructions to render judgment in favor of Oliphant on its claims for damages, interest, and attorney's fees and to determine pre- and post-judgment interest.

## I. BACKGROUND

On August 15, 2007, Oliphant sued Galaviz to collect an unpaid credit card debt, alleging it had acquired the unpaid account from Household Bank. In its prayer, Oliphant sought "judgment against [Galaviz] in the amount of at least $16,024.23, with interest thereon at the rate of 6% per annum from July 31, 2004 until date of judgment, costs of court, reasonable attorneys' fees as herein above alleged, and interest thereon in accordance with V.T.C.A., Finance Code § 304, and for such further relief, to which Plaintiff may be entitled." The petition included requests for disclosure and for admissions.

An affidavit and statement of account showing information on Galaviz's account were attached to the petition. The statement of account identifies Galaviz and his home address.

Two days after suit was filed, on August 17, 2007, the trial court wrote Oliphant advising it that, pursuant to rule of civil procedure 165a, the case was set for dismissal on November 16, 2007. The letter stated that if no answer had been filed, or an answer was insufficient to place any

fact in issue, Oliphant was expected to have moved for and have heard a summary judgment or proved up a default judgment before that date, and that Oliphant's failure to have done so would result in the dismissal of the case on that date. The letter also stated that live witnesses would not be required unless the default prove-up was for an unliquidated claim, and that liquidated claims and attorney's fees could be proved up by affidavit submitted with a form of judgment.

The record indicates that the citation and petition were served by delivering them personally to Galaviz at his home address. Proof of service was filed August 24, 2007. Galaviz did not answer or appear.

On October 18, 2007, Oliphant moved for default judgment on its "liquidated claim based upon an agreement and resulting account as indicated" in its petition and on its request for attorney's fees. The motion was supported by an affidavit and exhibits showing that Galaviz had bought a jet ski and related items on the Household Bank account; an affidavit on deemed admissions; an affidavit supporting attorney's fees; and a non-military affidavit.[1]

Instead of expressly denying the motion for default judgment, the trial court signed an Order to Amend Petition on October 19, 2007, ordering Oliphant to amend its original petition, reciting that the default judgment was being returned unsigned because of "one or more" specifically identified defects in Oliphant's petition on file. The purported deficiencies were (quoting):

Petition does not give fair notice of claim against Defendant[;]

Judgment relies on causes of action that are not adequately pleaded[;]

Damages cannot be accurately calculated, no written instrument attached to petition[;]

No evidence of sale and delivery of merchandise or performance of services[;]

No evidence that amount of the account or price charged is in accordance with an express contract or is usual, customary[,] and reasonable[;]

No evidence of a systematic record kept and supported by an affidavit[;]

Other: *correct defects in attached discovery*[.]

(Handwritten text in italics.) The trial court ordered Oliphant to amend its original petition to correct the listed deficiencies and serve the amended petition within thirty days of the order and cautioned that failure to amend and serve the amended petition "in a timely manner" would result in dismissal of the case for want of prosecution on or after the thirty-first day after the order was signed. Oliphant did not file an amended petition.

By letter dated November 16, 2007, the trial court advised Oliphant that the case was set for dismissal on November 30, 2007, and repeated the conditions stated in the August 17 letter as to a summary judgment, default judgment, or dismissal.

On November 26, 2007, Oliphant filed a Trial Brief in Support of Judgment, arguing among other things that it was entitled to a default judgment because it sought liquidated damages that were proved up by written instruments, and that deemed admissions supported all elements of its breach of contract claim. The brief also

---

1. Another attachment is headed "EXHIBIT C ASSIGNMENT AND BILL OF SALE" stating that Household Bank and Oliphant entered into an "Account Purchase and Sale Agreement" by which Oliphant bought accounts receivable "described in the Agreement and in Exhibit 'A' attached hereto." Neither the Agreement nor Exhibit A was attached, and nothing in this document refers to Galaviz or his Household Bank account number.

argued that credit card debt qualified as a sworn account pursuant to rule of civil procedure 185, notwithstanding authority to the contrary.

On November 30, 2007, the trial court signed an order dismissing the case, stating two reasons: (1) "[f]ailure to take action after notice of intent to dismiss for want of prosecution. (IN ACCORDANCE WITH RULE 165A LETTER)"; and (2) want of prosecution. This appeal followed.

## II. DEFAULT JUDGMENT

The trial court's October 19, 2007 Order to Amend Petition identified certain purported deficiencies in Oliphant's petition, as set out above, and impliedly denied Oliphant's pending motion for default judgment. On appeal, Oliphant argues it was entitled to default judgment on all elements of its breach of contract claim, including liquidated damages, and attorney's fees.

### A. Standard of Review

We consider a trial court's denial of a motion for default judgment when the denial is challenged in an appeal from a final judgment or order. *See Crown Asset Mgmt., L.L.C. v. Loring*, 294 S.W.3d 841, 842–43 (Tex.App.-Dallas 2009, pet. filed) (en banc); *Aguilar v. Livingston*, 154 S.W.3d 832, 833 (Tex.App.-Houston [14th Dist.] 2005, no writ). *See also* Tex.R.App. P. 33.1 (trial court ruling may be express or implicit). "Anytime after a defendant is required to answer, a plaintiff may take a default judgment if the defendant has not previously filed an answer, and the citation with the officer's return has been on file with the clerk for ten days." *Aguilar*, 154 S.W.3d at 834. *See* Tex.R. Civ. P. 239. *See also* Tex.R. Civ. P. 107.

### B. Fair Notice and Pleaded Cause of Action

In its October 19, 2007 Order to Amend Petition, the trial court identified two purported deficiencies related to pleading matters: no fair notice and no causes of action pleaded. Oliphant contends it pleaded a breach of contract claim and the pleadings give fair notice of its claim to Galaviz.

#### 1. Applicable Law

■ A default judgment is properly granted if: (1) the plaintiff files a petition that states a cause of action; (2) the petition invokes the trial court's jurisdiction; (3) the petition gives fair notice to the defendant; and (4) the petition does not disclose any invalidity of the claim on its face. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex.1988). *See* Tex.R. Civ. P. 45, 47. "The purpose of the fair notice requirement is to provide the opposing party with sufficient information to enable him to prepare a defense." *Paramount Pipe & Supply Co.*, 749 S.W.2d at 494.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, no writ). Reasonable attorney's fees may be recovered, in addition to the amount of a valid claim and costs, if the claim is for a written contract. Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 2008). *See id.* § 38.002 (providing for recovery procedure).

#### 2. Discussion

■ In its petition, Oliphant alleged Household Bank and Galaviz entered into a "Revolving Credit Account"; Household Bank opened a certain account; Galaviz

made purchases on the account but failed to pay the amount due; and Oliphant purchased Galaviz's account from Household Bank. The petition names Galaviz as the defendant and gives his social security number.

Attached to the petition was the affidavit of Sherri L. Wright, a "Legal Outsource Co–Manager" of Oliphant, who stated she was familiar with the business books and records of Household Bank's outstanding accounts; Household Bank maintained computerized account records for customers who had established a credit card account, line of credit, or promissory note; Household Bank sold Oliphant all rights, title, and interest in Galaviz's account; and she had personally reviewed Household Bank's records as they related to Galaviz's "credit card account, line of credit, or promissory note." Further,

> the amount attested to by Affiant as the balance owed to [Oliphant] from [Galaviz] accurately reflects the balance owed to [Oliphant] less any payments and/or credits, if any, on said balance acquired by [Oliphant] from the seller, but not including any post charge-off interest owed by [Galaviz] to [Oliphant] from the date of acquisition by [Oliphant] which amount is within the knowledge of affiant just and true, and that it is due and that all just and lawful offsets, payments and credits have been allowed.

The affidavit then repeats the Household Bank credit account number. It states Oliphant's customer account number and the "charge off balance" and "current balance" as $16,024.23. It notes the "account type" as "Yamaha-serviced."

Attached to the affidavit as Exhibit A is Oliphant's statement of account noting Galaviz's home address, social security number, and Oliphant's customer account number. The first part of the statement, the "originating account information," repeats the Household Bank information for Galaviz's account number. It says the account was opened by Household Bank on July 11, 2002; the date of the last payment was August 21, 2003, in the amount of $558; the charge-off date was July 31, 2004; the acquisition balance is $16,024.23; and the "Acq Interest Rate" is 6%. The second part of the statement is the "payment history." It notes Oliphant acquired the balance on August 20, 2004; there were no payments or amounts credited; and the remaining balance is $16,024.23. The statement says that Oliphant is a debt collector, attempting to collect a debt.

The petition and attachments identify the Household Bank account number, indicating the entity with which Galaviz contracted. We conclude this petition states a cause of action for breach of the contract Galaviz had with Household Bank that Oliphant acquired and was suing to collect.[2] Because the petition, with the incorporated attachments, provided Galaviz with sufficient information to enable him to prepare a defense for a breach of contract claim, we conclude it gives fair notice of this claim. *See Paramount Pipe & Supply Co.*, 749 S.W.2d at 494. We conclude the trial court erred by impliedly denying Oliphant's motion for default judgment on this ground.

## C. Liability

In its Order to Amend Petition, the trial court identified a purported deficiency related to the liability elements of Oliphant's breach of contract claim: no evidence of

---

**2.** The petition also alleged a cause of action for quantum meruit, which we do not discuss

further.

sale and delivery of merchandise or performance of services.

### 1. Applicable Law

■ A defendant who defaults admits all allegations of facts except unliquidated damages. *See Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); *Stoner v. Thompson,* 578 S.W.2d 679, 684–85 (Tex.1979).

### 2. Discussion

■ Oliphant's petition alleged that Galaviz "purchased goods [on his Household Bank account] . . ." and "promised to pay" for them but did not. The petition and attached affidavits and exhibits show that Galaviz opened a "Yamaha-serviced" account, bought items on that account, made some payments, but did not discharge his debt. By failing to answer and defaulting, Galaviz admitted all allegations of fact, including the sale and delivery of the purchased items and that he failed to pay for them. *See Holt Atherton Indus., Inc.,* 835 S.W.2d at 83; *Stoner,* 578 S.W.2d at 684–85. We conclude the admission by default of these facts entitled Oliphant to a default judgment on liability and the trial court erred by impliedly denying Oliphant's motion for default judgment on this ground.

### D. Damages and Attorney's Fees

In its October 19, 2007 Order to Amend Petition, the trial court also identified purported deficiencies related to the damage elements of Oliphant's breach of contract claim. Oliphant contends the pleadings and attached documents showed it was entitled to a default judgment on liquidated damages because the damages can be calculated from the factual allegations in its petition and the written instruments.

### 1. Applicable Law

■ When a plaintiff's claim is liquidated, and proven by an instrument in writing, the plaintiff may be awarded damages without the necessity of a hearing or the presentation of evidence. *Burrows v. Bowden,* 564 S.W.2d 474, 475 (Tex.Civ. App.-Corpus Christ 1978, no writ); TEX.R. CIV. P. 241. A claim is liquidated if the amount of damages caused by the defendant can be accurately calculated from: (1) the factual, as opposed to conclusory, allegations in the petition, and (2) an instrument in writing. *Freeman v. Leasing Assocs., Inc.,* 503 S.W.2d 406, 408 (Tex.Civ. App.-Houston [14th Dist.] 1973, no writ). A default judgment does not establish allegations pertaining to unliquidated damages. *First Nat'l Bank of Irving v. Shockley,* 663 S.W.2d 685, 689 (Tex.App.-Corpus Christi 1983, no writ). If damages are unliquidated or not proved by an instrument in writing, the court must hear evidence as to damages before a default judgment may be granted. TEX.R. CIV. P. 243. Attorney's fees are by their very nature unliquidated. The reasonableness of attorney's fees, in the absence of a contract therefore, is a question of fact and is an unliquidated demand for which the trial court entering a default judgment should hear evidence. *First Nat'l Bank of Irving,* 663 S.W.2d at 691.

### 2. Discussion

■ Wright's affidavit attached to Oliphant's petition stated that the balance of $16,024.23 did not include "any post charge-off interest" owed by Galaviz to Oliphant "from the date of acquisition." In its motion for default judgment Oliphant requested judgment on the debt owed in the amount of $16,024.23 as liquidated damages. In an affidavit attached to Oliphant's motion for default judgment, Wright stated she was "familiar with" Galaviz's specifically numbered account; it originated with Household Bank, and it had been sold and assigned to Oliphant, the present owner and holder and the par-

ty entitled to receive payment. Further, she said, in pertinent part,

> I am familiar with the records provided with the above-referenced account for JULIO GALAVIZ. Said records reflect that as of AUGUST 4, 2007, there was a balance owing of $16,024.23. That balance was made up of $16,024.23 in principal and in interest. The records reflect the last payment made on the account was AUGUST 21, 2003.

Another copy of Oliphant's statement of account for Galaviz was attached, showing some court costs charged after the balance was acquired but also showing the balance due as $16,024.23, the "Charge-off date" as July 31, 2004, and the "Acq Interest Rate" as 6%. Also attached were the front page of a "Yamaha Motor Corporation VISA Card Program" application completed by Galaviz and three invoices for a jet ski and extended warranty, unspecified miscellaneous accessories, and insurance for a total amount of $12,806.96.

Oliphant directs our attention to authorities in which liquidated damages could be calculated from written instruments. *See, e.g., Aavid Thermal Techs. of Tex. v. Irving Indep. Sch. Dist.*, 68 S.W.3d 707, 712 (Tex.App.-Dallas 2001, no pet.) (evidence of certified copies of tax rolls and tax statements from which the taxes could be calculated in suit to recover delinquent ad valorem taxes). Here, the petition, motion for default judgment, and attached documents show Galaviz opened a credit account with Household Bank, was issued a Yamaha credit card, and charged certain items on the account as shown by receipts he signed; the same account number is reflected on all documents in the record. The record shows Galaviz's account balance was $16,024.23 as of the charge-off

date and when Oliphant acquired it and sued Galaviz to recover this debt. The charge-off date and the interest rate are shown. Because we conclude the damages caused by Galaviz's failure to pay can be accurately calculated from the factual allegations in the petition and the instruments in writing, we further conclude Oliphant showed it was entitled to default judgment on liquidated damages. *See id.; Freeman*, 503 S.W.2d at 408.

In reaching our conclusion, we consider the three purported deficiencies related to damages identified by the trial court in its October 19, 2007 Order to Amend Petition and reject them as follows. First, concerning "no evidence that the amount of the account or price charged is in accordance with an express contract or is usual, customary, and reasonable," the exhibits attached to the motion for default judgment showed the jet ski bought on Galaviz's account, his signature on those receipts, the charge-off date, and the interest rate. Second, concerning "no evidence of a systematic record kept and supported by an affidavit," Wright stated in both her affidavits that she had reviewed Household Bank's account for Galaviz, and those account statements are attached to both the petition and the motion for default judgment. Third, the statement "damages cannot be accurately calculated, no written instrument attached to petition" is incorrect because Oliphant's statement of Galaviz's account is attached to both the petition and the motion for default judgment.[3]

Even if Oliphant's damages were unliquidated, we agree with Oliphant that it was entitled to default judgment because Galaviz's deemed admissions conclusively prove all elements of Oliphant's

---

**3.** The trial court also noted "correct defects in attached discovery" as a purported deficiency. This general statement does not support a decision on the motion for default judgment.

breach of contract claim. A trial court may be able to ascertain the amount of damages and attorney's fees in a default judgment based on a request for admissions. *Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 813 (Tex.App.-Waco 2007, no pet.). A plaintiff may serve a request for admissions as part of its petition, and when the defendant fails to file an answer or other response, those requests are deemed admitted. *Id.* at 811–12 (citing TEX.R. CIV. P. 198.2(c)). Deemed admissions may be employed as proof, and once admissions are deemed admitted by operation of law and where the admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon. This is because unanswered requests for admissions are deemed admitted without the necessity of a court order and any matter thus admitted is conclusively established as being true. *Id.* at 812–13 (citing TEX. Rs. CIV. P. 198.2(c), 198.3). Thus, the facts admitted may not be contradicted by evidence at the trial. *Id.* at 813 (citing *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989)).

As to damages, through deemed admissions, Galaviz admitted he "presently owes" Oliphant $16,024.23 on "the account as referenced in Plaintiff's Original Petition" and "[t]he contractual interest rate as agreed to by Defendant on the account made a basis of Plaintiff's Original Petition is 6%." *See id.* at 811–13. *See also Rowlands v. Unifund CCR*, No. 14–05–01122–CV, 2007 WL 1395101, at *3–4 (Tex.App.-

Houston [14th Dist.] Mar. 27, 2007, no pet.) (mem. op.) (debt collector relied on deemed admissions to support its motion for summary judgment on breach of contract claim).[4]

■ As to attorney's fees, through deemed admissions, Galaviz admitted that he had failed to pay the account; Oliphant had made a written demand for payment of the account more than thirty days before filing suit; and a reasonable attorney's fees "for the prosecution of this lawsuit would be at least the amount of $5,341.41." *See Garcia*, 229 S.W.3d at 811–13. We note also that affidavit testimony supported the award of attorney's fees.

We conclude the trial court erred by impliedly denying Oliphant's motion for default judgment on grounds it failed to establish damages resulting from Galaviz's breach of contract and attorney's fees. *See Burrows*, 564 S.W.2d at 475; TEX.R. CIV. P. 241.

### E. Conclusion

Having concluded that Oliphant was entitled to default judgment as to liability and damages on its breach of contract claim and attorney's fees, we resolve Oliphant's issue in its favor to this extent.

### III. DISMISSAL

Oliphant argues the trial court erred by dismissing this case for want of prosecu-

---

4. As noted, Oliphant established its damages by proving the amount of the debt, the charge-off or default date, the contractual interest rate, and the attorney's fees it had incurred. This case is, therefore, distinguishable from our recent opinions in *Collins Financial Services, Inc. v. Guerrero*, No. 05–07–01732–CV, 2009 WL 3032479, at *3 (Tex.App.-Dallas Sept. 24, 2009, no pet. h.) (mem. op.) (trial court could not calculate interest due on outstanding balance because plaintiff failed to offer evidence of default date and because of incongruities in evidence of damages), and *Resurgence Financial, LLC v. Taylor*, No. 05–07–01492–CV, 2009 WL 2712387, at *4 (Tex.App.-Dallas Aug. 31, 2009, no pet. h.) (evidence in support of motion for default judgment insufficient to establish interest due on account balance).

tion because Oliphant diligently pursued this case and moved for default judgment.

### A. Standard of Review and Applicable Law

We review a dismissal for want of prosecution under an abuse of discretion standard. *See Vann v. Brown,* 244 S.W.3d 612, 614 (Tex.App.-Dallas 2008, no pet.). *See also Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985) (trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles).

 A trial court's authority to dismiss a case for want of prosecution stems from two sources: (1) Texas Rule of Civil Procedure 165a, and (2) the trial court's inherent power. *Villarreal v. San Antonio Truck & Equip.,* 994 S.W.2d 628, 630 (Tex.1999). A trial court may dismiss a case under rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice" or when a case is "not disposed of within the time standards promulgated" by the supreme court. Tex.R. Civ. P. 165a(1), (2). *See* Tex.R. Jud. Admin. 6 (requiring judges to ensure, so far as reasonably possible, that civil nonjury cases are brought to trial or final disposition within twelve months from appearance date, and that civil jury cases are brought to trial or final disposition within eighteen months from appearance date). In addition, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute its case with due diligence. *Villarreal,* 994 S.W.2d at 630; *WMC Mortgage Corp. v. Starkey,* 200 S.W.3d 749, 752 (Tex.App.-Dallas 2006, pet. denied). Lack of diligence need not amount to abandonment for a case to be properly dismissed. *WMC Mortgage Corp.,* 200 S.W.3d at 752.

In determining whether a party has demonstrated a lack of diligence in prosecuting a claim, a trial court may consider the entire history of the case, including the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Id.* No single factor is dispositive. *Id.*

### B. Discussion

#### 1. Dismissal under Rule 165(a)

 The dismissal lists as a reason for dismissal "failure to take action after notice of intent to dismiss for want of prosecution," in accordance with its "rule 165a letter." However, a trial court may dismiss a case under rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice" or when a case is "not disposed of within the time standards promulgated" by the supreme court. Tex.R. Civ. P. 165a(1), (2). Although the dismissal order provides "failure to appear for a hearing or trial of which notice was had" as a reason for dismissal, the trial court did not check this reason for dismissal. In addition, the record shows that Oliphant filed suit on August 15, 2007, and moved for default judgment on October 18, 2007. The trial court dismissed it on November 30, 2007. This case was not pending beyond the time standards set by the supreme court. We conclude the record does not support dismissal pursuant to rule of civil procedure 165(a). *See* Tex.R. Civ. P. 165a(1), (2).

#### 2. Dismissal under Inherent Power

 In its October 19, 2007 Order to Amend Petition, the trial court ordered Oliphant to amend its petition for several specific reasons and cautioned Oliphant that failure to amend would result in dismissal for want of prosecution. The trial

court's dismissal letters advised Oliphant that failure to move for and have heard a summary judgment or prove up a default judgment before specific dates would result in dismissal. Because we have concluded Oliphant proved up a default judgment on its breach of contract claim, none of these grounds will support dismissal for want of prosecution for failure to amend as ordered under the trial court's inherent power. Further, we conclude the record does not show a lack of diligence by Oliphant in prosecuting its claim. *See Villarreal*, 994 S.W.2d at 630; *WMC Mortgage Corp.*, 200 S.W.3d at 752. Accordingly, we conclude the trial court abused its discretion in dismissing this case. *See Downer*, 701 S.W.2d at 241–42; *Vann*, 244 S.W.3d at 614. We resolve Oliphant's issue in its favor to this extent. We need not discuss the trial court's alternative summary judgment condition for dismissal.

## IV. CONCLUSION

Because of our disposition of Oliphant's issue, we reverse the trial court's order of dismissal and remand this cause to the trial court to render judgment in Oliphant's favor for $16,024.23 in damages and $5,341.41 in attorney's fees, and, in addition, to determine pre- and post-judgment interest. *See* TEX.R.APP. P. 43.2(c), (d) (court of appeals may reverse the trial court's judgment and render judgment in whole or in part, or may reverse the trial court's judgment and remand the cause for further proceedings).