

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00033-CV

**HOUSEHOLD FINANCE CORPORATION III**,
Appellant

v.

**DTND SIERRA INVESTMENTS, LLC**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-08367
The Honorable Antonia Arteaga, Judge Presiding

Opinion by:      Marialyn Barnard, Justice

Sitting:         Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:  November 6, 2013

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This is a restricted appeal from a no–answer default judgment in a suit to invalidate a lien, quiet title, and recover damages with respect to certain real property purchased by appellee DTND Sierra Investments, LLC ("DTND") at a homeowner's association foreclosure sale. On appeal, appellant Household Finance Corporation III ("Household Finance") raises the following issues, contending the default judgment should be reversed because: (1) DTND's pleadings were insufficient to state a cause of action for breach of contract, wrongful foreclosure, tortious interference with prospective business relations, and for claims under the DTPA; (2) the damages

awarded are not supported by the record; and (3) the attorney's fees awarded are not supported by the record. We affirm in part and reverse and remand in part.

## BACKGROUND

DTND purchased certain real property in Bexar County, Texas at a homeowner's association foreclosure sale. Household Finance is the first lien holder on the property in question based on a note and deed of trust executed by the borrower, Sean F. O'Niell. According to DTND, because Household Finance failed to redeem the property during the statutory redemption period after the foreclosure sale, it forfeited its interest in the subject property. *See* TEX. PROP. CODE ANN. § 209.011 (West Supp. 2012) (governing right of redemption after foreclosure). Thus, according to DTND, the title asserted by Household Finance "is defective and inferior" to the title claim by DTND. DTND claimed that despite its superior title, it requested from Household Finance the amount necessary to pay off the lien so it could clear the title. DTND asserted that despite numerous requests for the "lien payoff amount," Household Finance failed to respond.

On May 18, 2012, DTND filed suit against Household Finance. In the petition, DTND asserted that because Household Finance failed to redeem the property as required by section 209.011 of the Property Code, Household Finance forfeited its lien. DTND claimed Household Finance refused to provide DTND with a payoff amount, preventing DTND from clearing title and selling the property. DTND sought to invalidate Household Finance's lien and quiet title in favor of DTND. DTND also sought damages based on claims for violations of the DTPA, breach of contract, and tortious interference with prospective business relations.

Although served with citation through its registered agent, Household Finance failed to file an answer. Thereafter, DTND filed a motion for default judgment. At the default judgment hearing, Eric Allen Davis, the DTND investment manager, testified regarding unliquidated damages. The total actual damages sought were $63,500.00. In addition to actual damages, DTND

also sought punitive damages and treble damages under the DTPA. At the hearing, DTND specifically asked the trial court for $50,000.00 in exemplary damages, and asked the court to treble the amount of actual damages based on the DTPA for a total of $201,000.00. DTND also asked the court to quiet title in their favor.

DTND's attorney also testified regarding the recovery of attorney's fees, seeking $3,500.00. The attorney testified the amount was reasonable and necessary given the amount of work and the type of litigation. DTND also presented an affidavit from the attorney, which was attached to the motion for default judgment, in support of attorney's fees.

The trial court signed an order granting default judgment in favor DTND. The trial court awarded DTND all the damages and attorney's fees requested, trebling the actual damages and awarding $50,000.00 in exemplary damages. The court also rendered judgment that Household Finance's interest in the subject property through the deed of trust was invalid and unenforceable, and declared DTND the sole owner in fee simple of the property.

Although served with a notice of the default judgment, Household Finance filed neither a motion for new trial nor other postjudgment motion, nor did it file a standard notice of appeal. Rather, it ultimately filed a notice of restricted appeal pursuant to Rule 26.1(c) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 26.1(c).

## ANALYSIS

As noted above, in this restricted appeal, Household Finance challenges the default judgment based on insufficient pleadings and insufficient evidence of damages and attorney's fees. A restricted appeal is a direct attack on a default judgment. *Whitaker v. Rose*, 218 S.W.3d 216, 219 (Tex. App.—Houston [14th Dist.] 2007, no pet.). To be entitled to a restricted appeal, the appealing party must show: (1) it filed a notice of restricted appeal within six months after the judgment was signed; (2) it was a party to the underlying suit; (3) it did not participate in the

hearing that resulted in the judgment complained of, and did not timely file any postjudgment motions or a request for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Ins. Co. of State of Penn. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (citing *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004)); *In re B.H.B.*, 336 S.W.3d 303, 305 (Tex. App.—San Antonio 2010, pet. denied); *see also* TEX. R. APP. P. 26.1(c) (stating that in restricted appeal, notice of appeal must be filed within six months of date judgment or order is signed); TEX. R. APP. P. 30 (stating party who did not participate in hearing that resulted in judgment complained of and who did not timely file postjudgment motions, request for findings of fact and conclusion of law, or notice of appeal, may filed restricted appeal). An appellant must satisfy each element of a restricted appeal because each element is mandatory and jurisdictional. *Ibarra v. City of Laredo*, Nos. 04-11-00035-CV & 04-11-00037-CV, 2010 WL 3025709, at \*4 (Tex. App.—San Antonio July 25, 2012, pet. denied) (mem. op.) (citing *Serna v. Webster*, 908 S.W.2d 487, 491 (Tex. App.—San Antonio 1995, no writ)).

The parties seem to agree Household Finance satisfies the first three elements: notice of appeal filed within six months of the judgment, party to the suit, no participation in the hearing that resulted in the judgment complained of, and no postjudgment motions or a request for findings of fact and conclusions of law filed. *See Lejeune*, 297 S.W.3d at 255; *B.H.B.*, 336 S.W.3d at 305. Moreover, the record supports these elements. Therefore, this appeal considers whether the errors alleged by Household Finance are apparent from the face of the record. The face of the record includes all papers on file in the appeal, e.g., the documents in the clerk's record and the reporter's record. *Whitaker*, 218 S.W.3d at 220.

### Sufficiency of DTND's Pleadings

In its first three issues, Household Finance contends the default judgment must be reversed because DTND's pleadings were insufficient to state a cause of action for violations of the DTPA,

breach of contract, and tortious interference. Household Finance argues the allegations in DTND's petition are insufficient to give Household Finance notice of the actual claims against it. We disagree.

A default judgment is proper where: (1) the plaintiff files a petition stating one or more causes of action; (2) the petition invokes the trial court's jurisdiction; (3) *the petition gives fair notice of the claim or claims asserted*; and (4) the petition does not disclose any invalidity of the claim on its face. *Elite Door & Trim, Inc. v. Tapia*, 355 S.W.3d 757, 766 (Tex. App.—Dallas 2011, no pet.) (citing *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988); *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.—Dallas 2009, no pet.)) (emphasis added). The purpose of a pleading is to give fair notice of a party's claims and the relief sought, not to state evidence. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 457 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Bader v. Cox*, 701 S.W.2d 677, 686 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). "Fair notice" exists when the opposing party can ascertain from the pleading the nature of the claims, the basic issues in controversy, and what testimony will be relevant to the claim. *Tapia*, 355 S.W.3d at 766 (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)); *see also* TEX. R. CIV. P. 45(b) (stating pleadings shall consist of statement of cause of action in plain and concise language); TEX. R. CIV. P. 47(a) (stating a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved"). Fair notice is given when it provides sufficient information to allow the opposing party to prepare a defense. *Tapia*, 355 S.W.3d at 766 (citing *Auld*, 34 S.W.3d at 897). The fair notice standard "relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity." *Tapia*, 355 S.W.3d at 766; *see Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Texas courts have long held that forcing a party to plead his entire case with exactitude is not in harmony with the spirit of the rules governing

pleading. *See, e.g., Estate of Meniffee v. Barrett*, 795 S.W.2d 810, 812 (Tex. App.—Texarkana 1990, no writ); *Bader*, 701 S.W.2d at 686; *Rodriguez v. Yenawine*, 556 S.W.2d 410, 414 (Tex. Civ. App.—Austin 1977, no writ).

In determining whether a pleading is adequate, i.e., provides fair notice, we must determine whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy. *Tapia*, 355 S.W.3d at 766; *Bowen*, 227 S.W.3d at 91. That an element of a claim has been omitted, is not dispositive. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). When, as here, no special exceptions are filed, we must liberally construe the pleadings in favor of the pleading party. *Tapia*, 355 S.W.3d at 766; *Auld*, 34 S.W.3d at 897.

### *DTPA Violations*

As noted above, Household Finance claims DTND's petition is inadequate to state a claim under the DTPA. Specifically, Household Finance argues DTND's pleading is inadequate because the petition failed to allege: (1) DTND was a consumer or to state facts necessary to show it was a consumer; (2) facts or elements necessary to establish Household Finance can be sued under the DTPA, i.e., no allegations of a sale or leasing of goods or services; (3) facts or elements necessary to establish Household Finance committed a wrongful act or a false, misleading, or deceptive act; and (4) how DTND and Household Finance were in a consumer/debt collector relationship.

In its petition, DTND pled the facts, essentially as set forth in the "Background" section above. Thereafter, with regard to its DTPA claim, DTND alleged:

**DECEPTIVE TRADE PRACTICES**

14.     Plaintiff is a "consumer" as defined in Tex. Fin. Code Ann. § 392.001. Defendant is attempting to collect a debt from an alleged debt obligation; the purported debt is a consumer debt as defined in Tex. Fin. Code Ann. § 392.001.

15.     Plaintiff incorporates the factual allegations in Paragraphs 7 through 11 above.  Plaintiff would show that Defendant, by their actions as alleged herein, engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices – Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

16.     <u>DTPA Violations under Other Statute</u>.  Defendant engaged in false, misleading or deceptive acts as provided by the following "tie-in" statute, the Debt Collection Act (Texas Finance Code, Section 293.404(a)), as follows:

§ 392.304(a)(19) In debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: using another false representation or deceptive means to collect a debt or obtain information concerning a consumer.
Plaintiff alleges that Defendant's actions in failing to give Plaintiff a payoff amount to clear the lien on its property while interest and penalties accrue is a deceptive means to collect a debt as set out in § 392.304(a)(19).

17.     <u>Producing Cause</u>.  Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages more fully described herein below.

*   *   *

## MULTIPLE DAMAGES

26.     As alleged hereinabove, Plaintiff would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

27.     Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App.—El Paso 2012, pet. denied) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  To establish a DTPA claim, the plaintiff must prove: (1) it was a consumer; (2) the defendant engaged in false, misleading, or deceptive acts, or engaged in an unconscionable action or course of action; and (3) the deceptive act or unconscionable action was the producing cause of the plaintiff's

damages. *Bus. Staffing, Inc.*, 401 S.W.3d at 236 (citing *Amstadt*, 919 S.W.2d 649). Section 392.404(a) of the Texas Finance Code specifically states that a violation of Chapter 392 "is a deceptive trade practice" and actionable under the DTPA. TEX. FIN. CODE ANN. § 392.404(a) (West 2006).

DTND entitled the section in question "Deceptive Trade Practices" and made specific references to the statute. In addition, it cited to section 17.50 of the Act in support of a recovery of "multiple" damages. DTND specifically pled it was a consumer under Chapter 392 of the Finance Code and was seeking relief under the DTPA via the Finance Code. It asserted Household Finance violated a specific provision of the Finance Code, and that the stated violation was a producing cause of DTND's damages. At the end of the petition, DTND stated it suffered certain specific damages as a result of Household Finance's action. Liberally construing the DTPA allegations, as we must, *see Tapia*, 355 S.W.3d at 766; *Auld*, 34 S.W.3d at 897, we are compelled to hold the pleading provides fair notice. In other words, we hold an opposing attorney of reasonable competence would be able to ascertain the nature and the basic issues of the controversy. *See Tapia*, 355 S.W.3d at 766; *Bowen*, 227 S.W.3d at 91.

Household Finance's brief makes it patently clear it understood DTND was asserting a DTPA claim based on a violation of the Finance Code. Moreover, in its brief, Household Finance argues defenses appropriate to DTND's claim. Household Finance simply contends the claim is without merit. In fact, Household Finance dedicates a good portion of its reply brief to a discussion of how the DTPA claim lacks merit. However, to negate a default judgment based on a lack of merit on the face of the pleadings, the petition itself must disclose the invalidity of the claim. *See Tapia*, 355 S.W.3d at 766 (citing *Muhr*, 749 S.W.2d at 494); *Galaviz*, 299 S.W.3d at 834). The face of the petition does not invalidate the DTPA claim. Rather, the possible lack of merit of the claim is disclosed only by the argument in Household Finance's briefing. The merit of a claim

does not play a role in the determination of fair notice. *See Tapia*, 355 S.W.3d at 766 (citing *Auld*, 34 S.W.3d at 896); *see also* TEX. R. CIV. P. 45(b); TEX. R. CIV. P. 47(a). Accordingly, we overrule Household Finance's first issue.

*Breach of Contract*

Household Finance also claims DTND's petition is inadequate to state a breach of contract claim. Specifically, Household Finance argues DTND's pleading is inadequate because the petition failed to allege: (1) facts or elements necessary to establish the existence of a contract; (2) facts or elements necessary to establish a breach of contract; and (3) damages.

As to the breach of contract claim, DTND again pled the facts, essentially as set forth in the "Background" section above, and then alleged:

**BREACH OF CONTRACT**

18. Plaintiff incorporates the factual allegations in Paragraphs 7 through 11 above.

HOUSEHOLD FINANCE CORPORTION III is bound by the terms of the note and deed of trust signed by Sean F. O'Niell. DTND Sierra Investments LLC, as successor to the beneficial interests of Sean F. O'Niell was entitled to the rights and beneficial interests set out in the note and deed of trust signed by Sean F. O'Niell. HOUSEHOLD FINANCE CORPORATION III and its agents failed to give DTND Sierra Investments LLC the payoff on the property. The failure to give the payoff amount constituted a breach of contract.

A breach of contract claim requires that a plaintiff prove: (1) the existence of a valid contract between the plaintiff and the defendant; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex. App.—San Antonio 2007; pet. denied). A review of DTND's petition establishes it alleged that as the successor-in-interest to the borrower, it was entitled to the same rights afforded the borrower under

the note, and under the note, the borrower had the right to be advised of the amount necessary to pay off the note. DTND asserted it requested on numerous occasions that Household Finance provide it with the amount needed to pay off the note so DTND could obtain clear title to the property, but Household Finance breached the note by failing to provide the information. These allegations cover the first three elements of a breach of contract claim, and clearly provide fair notice of the basis of the claim.

Admittedly, a damage allegation is not specifically included in the breach of contract section of the petition. But, as previously noted, toward the end of the petition, DTND pled for damages based the actions or omissions of Household Finance as "described hereinabove." Thus, we hold DTND set forth all elements of its breach of contract claim, and certainly set forth the claim with sufficient specificity to advise an opposing attorney of reasonable competence of the nature and the basic issues of the controversy. *See Tapia*, 355 S.W.3d at 766; *Bowen*, 227 S.W.3d at 91.

Household Finance's brief establishes its understanding of the breach of contract claim, raising numerous defenses in opposition to the claim. As with the DTPA claim, Household Finance dedicates a portion of its reply brief to arguing the breach of contract claim is without merit. Again, to reverse a default judgment based on a lack of merit on the face of the pleadings, the petition must disclose the invalidity of the claim on its face. *See Tapia*, 355 S.W.3d at 766 (citing *Muhr*, 749 S.W.2d at 494); *Galaviz*, 299 S.W.3d at 834. Here, the face of the petition does not invalidate the breach of contract claim. Rather, Household Finance attempts to do that in its brief and reply brief. However, just as with the DTPA claim, the merit of a claim does not play a role in the determination of fair notice. *See Tapia*, 355 S.W.3d at 766 (citing *Auld*, 34 S.W.3d at 896); *see also* TEX. R. CIV. P. 45(b); TEX. R. CIV. P. 47(a). A plaintiff's ultimate lack of success

does not equate to a failure to provide fair notice. We therefore overrule Household Finance's second issue.

*Tortious Interference with Prospective Business Relations*

Finally, with regard to lack of notice, Household Finance claims DTND's petition is inadequate with regard to the tortious interference claim. Specifically, Household Finance argues DTND's pleading is inadequate because the petition failed to allege: (1) facts necessary to establish a reasonable probability that DTND would enter into a business relationship with a third party; (2) facts necessary to establish Household Finance intentionally interfered with an alleged business relationship or had actual knowledge of a prospective business relationship; (3) facts to establish Household Finance was independently tortious; and (4) damages.

As with its other causes of action, DTND again pled the facts, essentially as set forth in the "Background" section above, and then alleged with regard to tortious interference:

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

19. Plaintiff incorporates the factual allegations in Paragraphs 7 through 11 above. Defendant tortiously interfered with the Plaintiff's right to possess, lease and/or dispose of the Property. Conduct by a defendant that is detrimental to a plaintiff's ability to sell, retain, lease or otherwise dispose of its property, as plaintiff intended, constitutes tortious interference with a prospective contract or prospective business relation. *Surprise v. DeKock*, 84 S.W.3d 378, 381–82 (Tex. App.—Corpus Christi 2002, no writ) (court held that defendant's posting signs and calling prospective buyers interfered with plaintiff's effort to dispose of their property as they intended as plaintiffs had intended to keep the property for the use and benefit of the children, but were forced to sell quickly at less than fair market value due to defendants' conduct).

20. The defendant's conduct as alleged herein has prevented Plaintiff from entering inter [sic] an agreement to sell the property to exact Plaintiff's equity.

Texas has long recognized the tort of interference with prospective business relations. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 712–13 (Tex. 2001). Although the Texas Supreme Court has never set forth the elements for this claim, *see Prudential Ins. Co. of Am. v. Fin. Review*

*Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000), several appellate courts have. *See, e.g., Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied); *Labor v. Warren*, 268 S.W.3d 273, 278 (Tex. App.—Amarillo 2008, no pet.); *Tex. Disposal Sys. Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W.3d 563, 590 (Tex. App.—Austin 2007, pets. denied); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pets. denied). These courts hold that to establish a claim for tortious interference with prospective business relations, a plaintiff must show: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a desire to prevent the relationship or with the knowledge the interference was likely to occur as a result of its conduct; (3) lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., the defendant's actions prevented the relationship. *Labor*, 268 S.W.3d at 278.

Clearly, DTND did not plead each of these elements. However, DTND specifically identified the cause of action and described the basis for the allegation: by failing to provide DTND with the information necessary to pay off the existing lien, Household Finance prevented DTND from leasing or selling the property. Moreover, DTND cited a case from the Corpus Christi Court of Appeals that held the plaintiffs did not have to specifically use the terms "prospective contract" or "business relationship" in their pleading to state a cause of action for tortious interference with contract or business relations. *See Surprise v. DeKock*, 84 S.W.3d 378, 380–82 (Tex. App.—Corpus Christi 2002, no pet.). Rather, it was sufficient that they claimed the defendants interfered with their right to dispose of their real property. *Id.* According to the court of appeals, the plaintiffs had stated a claim for tortious interference with business relations, and in fact were entitled to

recover on that claim where the evidence established the defendants interfered with the plaintiffs' efforts to sell their real property.  *Id.*

Based on DTND's allegations, as well as its citation to a particular case that held there was a right to recover based on an interference with the sale of real property, we hold the petition provided fair notice of the tortious interference claim.  DTND set forth the claim with sufficient specificity that an opposing attorney of reasonable competence would be able to ascertain the nature and the basic issues of the controversy.  *See Tapia*, 355 S.W.3d at 766; *Bowen*, 227 S.W.3d at 91.

Admittedly, DTND failed to include a specific damage allegation in the tortious interference section of the petition.  However, as previously indicated, toward the end of the petition, DTND pled for damages based on the actions or omissions of Household Finance as "described hereinabove."  Thus, we find DTND set forth all elements of its tortious interference claim, and certainly set forth the claim with sufficient specificity to allow an opposing attorney of reasonable competence to ascertain the nature and the basic issues of the controversy.  *See Tapia*, 355 S.W.3d at 766; *Bowen*, 227 S.W.3d at 91.

And again, Household Finance's brief establishes its understanding of the claim, noting possible defenses to it.  As stated with regard to the other claims, the petition does not, on its face, negate the viability of the tortious interference claim – Household Finance attempts to do that in its briefing.  The merit of a claim does not play a role in the determination of fair notice.  *See Tapia*, 355 S.W.3d at 766 (citing *Auld*, 34 S.W.3d at 896); *see also* TEX. R. CIV. P. 45(b); TEX. R. CIV. P. 47(a).  Accordingly, we overrule Household Finance's third issue.

### *Oral Argument*

We note that, at oral argument, it became apparent that contrary to the arguments and authorities in the original brief, Household Finance was claiming the record established the

invalidity of the claims in the petition. However, the law in this regard specifically states that a default judgment is proper unless the invalidity of the claim in question is established *by the face of the petition*, not the record as a whole. *See Tapia*, 355 S.W.3d at 766 (citing *Muhr*, 749 S.W.2d at 494; *Galaviz*, 299 S.W.3d at 834). Based on our review of the petition, we hold the claims appear viable on their face. Moreover, even considering the record in its entirety, there is nothing to disclose the alleged invalidity of DTND's claims. Rather, only if we go behind the petition and review the underlying merits in light of substantive law are any potential invalidities exposed.

Household Finance may be correct that DTND's claims lack merit. Any absence of merit, however, becomes apparent only when the claims are substantively reviewed based on applicable law; the absence of merit, if any, does not appear on the face of the petition. Accordingly, if this is the argument Household Finance attempted to raise in its brief, we hold it does not entitle Household Finance to a reversal of the default judgment.

### *Insufficient Evidence of Damages*

In its fourth issue, Household Finance contends the evidence is legally and factually insufficient to support the damages awarded by the trial court in the default judgment. Specifically, Household Finance contends the evidence put forth by DTND in support of damages was speculative and conclusory. Household Finance further contends there was nothing to establish the damage witness had personal knowledge or a sufficient foundation for his testimony.

When a plaintiff obtains a default judgment against a non-answering defendant on a claim for unliquidated damages, all factual allegations in the petition are deemed admitted, except for the amount of damages. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 72 (Tex. App.—San Antonio 2007, pet. denied) (citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.— Dallas 2005, no pet.) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992);

*Arenivar v. Providian Nat'l Bank*, 23 S.W.3d 496, 497 (Tex. App.—Amarillo 2000, no pet.)). When a claim for unliquidated damages is alleged in a default judgment, the trial court must hear evidence on the damages. *Argyle Mech., Inc.*, 156 S.W.3d at 687 (citing *Holt Atherton Indus.*, 835 S.W.2d at 83; TEX. R. CIV. P. 243). This court has held, in the context of an award of unliquidated damages after a no-answer default judgment, that "[t]he damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts." *Paradigm Oil, Inc.*, 242 S.W.3d at 72 (quoting *A.B.F. Freight Sys., Inc. v. Autstrian Imp. Servs., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied)); *see also Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 635 (Tex. App.—Dallas 2000, pet. denied). Damages that are purely conjectural or speculative are too uncertain to be ascertained and cannot be recovered. *Tate*, 24 S.W.3d at 635.

On appeal, the defendant against whom a no-answer default judgment has been taken may challenge the legal and factual sufficiency of the evidence to support any award of unliquidated damages. *Paradigm Oil, Inc.*, 242 S.W.3d at 72; *Argyle Mech., Inc.*, 156 S.W.3d at 687. An appellate court will sustain a legal sufficiency or "no evidence" challenge if the record shows: (1) a complete absence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The appellate court must consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that supports it. *Id.* at 822. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In its review, the appellate court must credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a

reasonable factfinder could not. *See id.* In reviewing a factual sufficiency challenge, we examine all the evidence to determine if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the judgment should be set aside and a new trial ordered. *Thomas v. Martinez*, 217 S.W.3d 680, 683 (Tex. App.—Dallas 2007, pet. stricken); *Dawson v. Briggs*, 107 S.W.3d 739, 748 (Tex. App.—Fort Worth 2003, no pet.). We will reverse only if the finding is against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a restricted appeal, the scope of review is limited to the "face of the record," which consists of all the papers on file in the appeal, including the reporter's record. *Jackson v. Gutierrez*, 77 S.W.3d 898, 902 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

At the default judgment hearing, DTND presented Eric Allen Davis, the DTND investment manager, to provide evidence of its alleged damages. Davis testified that as the investment manager, he oversaw the purchase of investment properties and assessed such properties for income potential and disposition. Davis stated DTND purchased the subject property in July 2011 at "the HOA foreclosure auction." As to damages, the testimony, in its entirety, was as follows:

> Q. Okay. Could you please tell the Court a little bit about your actual damages starting out with all the out-of-pocket expenses associated with the failure of the bank to give us – to give DTND a purchase price[?]
>
> A. Okay. Out-of-pocket expenses on that were about $500.
>
> Q. Okay. And could you please testify to the Court what your costs and expenses were for taxes and insurance on the property and other costs associated with maintaining the property since October 1, 2011.
>
> A. The taxes since that date amount to about $9,500. And the other expenses related to that were in the amount of $5,000.
>
> Q. So that is a total of $14,500, is that correct?
>
> A. That is correct.

Q.      Okay.  And adding to that the out-of-pocket expenses, that's a total of $15,000, is that correct?

A.      That is correct.

Q.      Okay.  Could you please tell the Court any and all interest or penalties that the plaintiff has suffered as a result of the failure to allow the cure of the lien[?]

A.      The interest on that would be $13, 500.

Q.      And can you please tell the Court a little bit about the lost or unrealized equity[?]

A.      The rental – potential rental income of that property was approximately $3,500 a month, amounted to $35,000.

Q.      And is that for the ten months that DTND was not able to rent it because of the clouded title by the –

A.      That is correct.

Q.      Okay.  So to be clear, those amounts again are 15,000, 13,500, and 35,000; is that correct?

A.      That is correct.

Q.      Okay.  And so by your total is that 63,500 total for the – for those amounts that you've testified to?

A.      Yes.

We must determine whether the amounts to which Davis testified were based on something more than mere speculation or conjecture, and were arrived at "by reference to some fairly definite standard, established experience, or direct inference from known facts." *Paradigm Oil, Inc.*, 242 S.W.3d at 72 (quoting *A.B.F. Freight Sys.*, 798 S.W.2d at 615).  In other words, are the damage amounts stated by Davis purely conjectural or speculative so that they are too uncertain to be ascertained, prohibiting recovery?  *See Tate*, 24 S.W.3d at 635.

In *Huynh v. Vo*, a case relied upon by Household Finance, the First Court of Appeals concluded evidence of damages in a restricted appeal from a no-answer default judgment were

- 17 -

legally insufficient because the plaintiff had done nothing more than state the total amount of damages sustained. No. 01–02–00295-CV, 2003 WL 1848607, at *5 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, no pet.) (mem. op.). In reaching its conclusion, the court relied upon the supreme court's holding in *Holt Atherton*, in which the supreme court held evidence as to damages was legally insufficient because the plaintiff did not provide any indication of how the amount of damages was determined. *Id.* (citing *Holt Atherton*, 835 S.W.2d at 84).

In *Holt Atherton*, the plaintiff sought damages for lost profits. 835 S.W.2d at 84. At trial, the plaintiff's attorney asked the plaintiff: "Now as a result of the defendant keeping the dozer for eight months, did you lose out on $200,200 in lost income during that time period." *Id.* The plaintiff responded, "Yes, sir, I did." *Id.* The supreme court held this testimony was legally insufficient because it did not provide any indication of how the plaintiffs determined what their lost profits were. *Id.* The court held this testimony did not provide a basis for determining whether the damages were established with reasonable certainty or were based on pure speculation. *Id.*

This court reached the same conclusion with regard to similar testimony in *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, no pet.). In *Lefton*, a homeowner testified she lost $60,000 when she was forced to sell her home. *Id.* We first noted that as the owner of her home, the plaintiff was clearly qualified to testify about its value. *Id.* (citing *Porras v. Craig*, 675, S.W.2d 503, 505 (Tex. 1984)). However, because the homeowner failed to explain *how* she arrived at the $60,000 figure, we held the evidence was legally insufficient. *Id.* (emphasis added). This court stated it had "no way of knowing what she based her conclusion on," and therefore her estimate could be pure speculation. *Id.* Noting there can be no recovery for damages which are speculative or conjectural, we reversed the damage award. *Id.* (citing *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 135 (Tex. App.—San Antonio 1985, no writ) (reversing a default judgment award for damages to credit reputation)).

Based on our review of the exchange between DTND's attorney and Davis, we hold Davis provided the same kind of speculative evidence the supreme court found legally insufficient in *Holt Atherton*, and that this court rejected in *Lefton*. *See Holt Atherton*, 835 S.W.2d at 84; *Lefton*, 136 S.W.3d at 277. Davis merely gave totals for out-of-pocket expenses, taxes, insurance, "other expenses," interest and penalties, and lost profits due to an inability to rent the property. Davis did not explain how he came by these totals, and in some instances, exactly what the damage was other than by general reference, e.g., out-of-pocket expenses. We hold Davis's testimony is conclusory, without support, and speculative. Accordingly, we hold there is legally insufficient evidence of actual damages and sustain Household Finance's fourth issue.

Assuming without deciding that the trial court could (1) award both treble and exemplary damages in this matter,[1] and (2) did not err in awarding the amount of treble damages awarded,[2] if we determine there was no evidence of actual damages, these exemplary and treble damage awards must fall. The supreme court has held that to recover exemplary damages, a plaintiff must allege, prove, and secure findings on the existence and amount of actual damages.[3] *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 903 (Tex. 1985); *see AVCO Corp., Textron Lycoming Reciprocating Engine Div. of AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 662 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The supreme court's mandate has been codified in section 41.004 of the Texas Civil Practice & Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a) (West 2008); *Interstate Sw., Ltd.*, 251 S.W.3d at 662.

---

[1] Under section 41.004(b) of the Texas Civil Practice & Remedies Code, exemplary damages may not be awarded to a claimant who elects to have his recovery multiplied under another statute. TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(b) (West 2008).

[2] Attorney's fees are not "actual damages" subject to trebling under the DTPA. *See Cain v. Pruett*, 938 S.W.2d 152, 158 (Tex. App.—Dallas 1996, no writ).

[3] There is an exception to this rule in the limited context of a wrongful death action for the death of an employee covered by worker's compensation. *See Wright v. Gifford–Hill & Co., Inc.*, 725 S.W.2d 712, 714 (Tex. 1987). That exception is not applicable here.

As for treble damages under the DTPA, it is axiomatic that without a recovery of actual damages, a plaintiff is not entitled to treble damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1), (h) (West 2011); *see also St. John v. Barker*, 638 S.W.2d 239, 245 (Tex. App.— Amarillo 1982), *judgment modified by Durham v. St. John*, 645 S.W.2d 261 (Tex. 1983); *Guerra v. Brumlow*, 630 S.W.2d 425, 430 (Tex. App.—San Antonio 1982, no writ). In the absence of actual damages, there is nothing to treble. *See Barker*, 638 S.W.2d at 245; *Guerra*, 630 S.W.2d at 430.

The supreme court has instructed that when an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages. *See Holt Atherton*, 835 S.W.2d at 86; *Morgan*, 675 S.W.2d at 734; *see also Lefton*, 136 S.W.3d at 280 (remanding for new trial on economic damages and mental anguish damages, but affirming attorney fee award). The judgment as to liability must be affirmed because when a default judgment is taken against a non-answering defendant on a claim for unliquidated damages, all allegations of fact contained in the petition are deemed admitted except for the amount of damages. *Holt Atherton*, 835 S.W.2d at 83; *Morgan*, 675 S.W.2d at 734; *Argyle Mech., Inc.*, 156 S.W.3d at 687.

### *Insufficient Evidence of Attorney's Fees*

In its fifth and final issue, Household Finance contends the evidence is legally and factually insufficient to support the award of attorney's fees. Because the damage evidence is legally insufficient, we must also reverse with regard to the award of attorney's fees. Although a prevailing party is entitled to recover attorney's fees on a breach of contract claim and a DTPA claim, both of which were asserted by DTND, the prevailing party must recover actual damages to recover attorney's fees. *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 350 (Tex. App.—

Fort Worth 2003, pet. denied); *see Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam) (breach of contract); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002) (DTPA). We therefore sustain Household Finance's fifth issue.

CONCLUSION

Based on the foregoing, we hold: (1) DTND's petition gave fair notice of its claims for violations of the DTPA, breach of contract, and tortious interference with business relations; (2) DTND's petition, on its face, did not disclose the invalidity, if any, of its claims; (3) there was no evidence to support the actual damage awards; and (4) in the absence of an actual damage award, neither exemplary damages, treble damages nor attorney's fees may be recovered. The supreme court has instructed that when an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is a remand for a new trial on the issue of unliquidated damages. *See Holt Atherton*, 835 S.W.2d at 86; *Morgan*, 675 S.W.2d at 734; *see also Lefton*, 136 S.W.3d at 280 (remanding for new trial on economic damages and mental anguish damages, but affirming attorney fee award). The judgment as to liability must be affirmed because when a default judgment is taken against a non-answering defendant on claim for unliquidated damages, all allegations of fact contained in the petition are deemed admitted except for the amount of damages. *Holt Atherton*, 835 S.W.2d at 83; *Morgan*, 675 S.W.2d at 734; *Argyle Mech., Inc.*, 156 S.W.3d at 687.

Accordingly, we affirm the trial court's judgment on liability, but we reverse the judgment as to all damages and attorney's fees and remand those issues to the trial court for a new trial.

Marialyn Barnard, Justice