**Andrew G. VANCE and 381 other Similarly Situated Employees, Gareth B. Ragland and 1429 other Similarly Situated Employees, Appellants,**

v.

**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and General Electric Company, Appellees.**

No. 90–CA–2553–S.

Court of Appeals of Kentucky.

Aug. 2, 1991.

---

Scott M. Miller, Miller & Meade, P.S.C., Louisville, for appellants.

James Michael Deep, Cabinet for Human Resources, Frankfort, for appellee Ky. Unemployment Ins. Com'n.

Edwin S. Hopson, Michael K. Kirk, Wyatt, Tarrant & Combs, Louisville, for appellee Gen. Elec. Co.

Before CLAYTON, HOWERTON and McDONALD, JJ.

McDONALD, Judge.

This case presents a question of statutory application and interpretation which concerns the rights of the many appellants to unemployment compensation benefits.

The facts are not in dispute. Appellants are hourly employees of General Electric Company and work at GE's Appliance Park facility in Louisville, where they make washers and dryers. Appellants are also members of a union, Local 761, International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL–CIO. Appellants work various shifts (7 a.m.–3 p.m., 3 p.m.–11 p.m. and 11 p.m.–7 a.m.) and on Friday, June 16, 1989, went out on strike. All appellants missed one shift of work, which commenced at 3 p.m. on Friday and which ended on 3 p.m. the following Monday, June 19th. The decision of the referee clearly states, "The dispute which lead [sic] to the strike was resolved at the conclusion of the strike." The third shift (11–7) worked its normal shift Monday night. The first shift (7–3) worked Tuesday morning. The second shift (3–11) worked for about five hours at which time those appellants were notified, as were the others, that there would be no work available the rest of the week due to equipment breakdown. The appellants all applied for unemployment compensation benefits for those days of work missed that week for reasons unrelated to the strike.

The referee and the Kentucky Unemployment Insurance Commission denied benefits to appellants based on their interpretation of KRS 341.360(1) and the commission's regulation defining "week." The Franklin Circuit Court in a terse order affirmed the decision of the commission.

At issue is KRS 341.360(1) which provides in pertinent part as follows:

No worker may be paid benefits for any week of unemployment: (1) With respect

to which a strike or other bona fide labor dispute which caused him to leave or lose his employment is in active progress in the establishment in which he is or was employed....

Although the "cause" of appellants' loss of work was not the strike (which had been settled), and even though there was no "labor dispute ... in active progress" at the time the appellants were laid-off, the commission declined benefits because it interpreted the statute to require disqualification whenever a claimant loses any time from work for strike-related reasons during a week, as defined by 903 KAR 5:110. Under this regulation a "week of employment" is defined as ...

a calendar week of seven (7) consecutive calendar days, beginning 12:01 a.m. Sunday and ending 12 midnight the following Saturday.

This interpretation is, we believe, erroneous as a matter of law for a number of reasons.

■ First, any question of statutory construction or interpretation begins with the issue of the intent of the legislature in its passage. KRS 446.080(1) mandates as follows:

All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature.

See also, Firestone Textile Company Division, Firestone Tire and Rubber Company v. Meadows, Ky., 666 S.W.2d 730, 732 (1984), wherein Justice Leibson stated, "All presumptions will be indulged in favor of those for whose protection the enactment was made." The purpose of the unemployment compensation scheme and the intent of our lawmakers was clearly expressed in Kentucky Unemployment Insurance Commission v. Kroehler Manufacturing Company, Ky., 352 S.W.2d 212, 214 (1961), thusly:

The purpose of the General Assembly in the enactment of such legislation was to provide benefits for only those employees who have been forced to leave their employment because of *forces beyond their control and not because of any voluntary act of their own.* (Emphasis added).

The unemployment statutes are designed to protect workers who, through no fault of their own, find themselves without work. It is agreed by all that these appellants lost several days of work for reasons totally beyond their control. The commission's application of the disqualification statute thus works a forfeiture of benefits inconsistent with the policy and purposes of the act.

■ Next, the plain words of the statute dictate against its application in situations where, as here, the cause of the loss of employment is not due to a labor dispute. The disqualification applies only where (1) there "is" (not "was") a labor dispute "in active progress" which "caused" the claimant "to leave or lose his employment." Obviously this statute is meant to disqualify employees who have lost work due to a strike from receiving benefits. By use of the present tense verb "is," the statute has no application to work lost to other causes in a week where coincidentally there "was" a labor dispute. Stated differently, if the labor dispute is not the cause of the loss of employment, that there was a strike at some other point in the week is irrelevant. If the legislature wanted to penalize workers who strike and provide for no benefits for *any* reason during any week a strike occurs regardless of its duration, it could easily have drafted such a statute. KRS 341.360(1), however, does not, as the appellees insist, so provide.

■ Finally, this issue must be resolved in favor of the appellants under the authority expressed in *Johnson v. Kentucky Unemployment Insurance Commission,* Ky., 367 S.W.2d 253, 256 (1963), wherein it states:

From the manner in which the terminology of KRS 341.360(1) departs from the standard provision heretofore mentioned as having been generally adopted elsewhere *it seems clear that our legislature did not intend the continuing consequences of a labor dispute to affect eligibility for unemployment compen-*

*sation beyond the moment of its settlement.* This was a more liberal provision than most of the other states saw fit to make.... It [KRS 341.360(1)] simply calls for two concurring circumstances, (a) that the labor dispute caused the loss of employment in the first place, and (b) that the same dispute is still in active progress. (Emphasis added).

As stated before, it is undisputed that the labor dispute in the instant case had ended before another unrelated cause arose to deprive appellants of work. Regardless of how the statute or regulations define "week of employment," KRS 341.360(1) has no application to the facts of this dispute.

Accordingly, the judgment of the Franklin Circuit Court is reversed and the matter is remanded to the appellee, Kentucky Unemployment Insurance Commission, for further proceedings consistent with this opinion.

All concur.