NO. 07-11-00012-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 5, 2012

P. MCGREGOR ENTERPRISES, INC., APPELLANT

v.

HICKS CONSTRUCTION GROUP, LLC, DONALD Q.
HICKS, HICKS CONSTRUCTION GROUP, LLP, BILLY
HICKS, PATRICIA HICKS, R.S.M. BUILDERS SUPPLY,
INC., DAVID NANCE AND DENMAN BUILDING
PRODUCTS, LTD., APPELLEES

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 91,691-E; HONORABLE DOUGLAS WOODBURN, JUDGE

Before HANCOCK, J., and BOYD, S.J.[1], AND MOORE[2]

**OPINION**

Appellant, P. McGregor Enterprises, Inc. (McGregor), appeals the granting of a

summary judgment in favor of appellees, David Nance and Denman Building Products,

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] Kelly Moore, Judge of the 121st District Court, sitting by assignment.

Ltd. (Nance and Denman), that ordered that McGregor take nothing against Nance and Denman. We will affirm.

Factual and Procedural Background

On April 5, 2001, McGregor entered into a "Standard Form of Agreement Between Owner and Construction Manager" with Hicks Construction Group, LLC (Hicks).[3] This contract covered the building of an addition to the Ashmore Inn & Suites in Lubbock, Texas. In connection with this project, Hicks sought bids from subcontractors for a portion of the work involving the framing, drywall, exterior finishing and insulation system (EFIS), roof trusses, and roof decking. A bid was received from Martinez Acoustical Drywall for $413,600 on May 31, 2001. On June 14, 2001, Denman submitted a bid that totaled $446,914, but excluded the 5/8ths inch plywood roof decking and excluded tape, bed, and texture of the drywall. Later that same day, Denman submitted a second bid that included the 5/8ths inch plywood roof decking but still excluded the tape, bed, and texture of the drywall. The second Denman bid was for a total of $413,400. The second Denman bid also included a statement that "the availability for our men to stay at the Ashmore Inn and Suites is also considered in the above referenced bid." Included in the second bid was the statement that:

> The above referenced quotation is offered with the understanding and commitment that Denman Building Products will be the subcontractor for the above referenced scope of work on the Amarillo project.

---

[3] Hicks Construction is not a party to this appeal as all matters in controversy between McGregor and Hicks were adjudicated by a final judgment entered against Hicks on December 13, 2010.

The second bid reflects that the sum of $12,800 was added to the bid for per diem expenses for the employees of Denman. Denman's bid was accepted by Hicks, and a standard contract between the contractor, Hicks, and subcontractor, Denman, was signed on June 25, 2001. Denman commenced its work on the project and, during the construction, submitted change orders to Hicks. Issues arose between Hicks and McGregor that resulted in McGregor terminating Hicks on April 1, 2002. Denman completed its work on the Lubbock project and, on April 18, 2002, submitted a request for final payment to McGregor directly. McGregor paid the final invoice on or about May 14, 2002, as evidenced by a deposit slip showing the check to be deposited in Denman's bank on that day.

McGregor filed the lawsuit concerning the addition to the Lubbock Ashmore Inn on December 2, 2003, by which it alleges causes of action against Denman in the nature of negligent construction, breach of contract, and civil conspiracy. The original petition also contained allegations against Denman regarding the Amarillo construction project. The Amarillo project was subject to an arbitration agreement and was subsequently arbitrated. The trial court confirmed the arbitrator's award by an order filed on August 27, 2004. The Amarillo project lawsuit was severed from the matter before the Court. This Court subsequently upheld the arbitration award. P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd., 279 S.W.3d 717 (Tex.App.—Amarillo 2007, pet. ref'd).[4]

---

[4] The judgment was modified to eliminate an award of post-arbitration attorney's fees. See id. at 726.

3

After severance of the Amarillo portion of the lawsuit, Denman filed a no-evidence motion for summary judgment,[5] to which McGregor filed a response. Denman then filed an amended motion for summary judgment which included a traditional motion for summary judgment[6] as to some of McGregor's claims and amended the no-evidence motion for summary judgment previously filed. Subsequently, Denman filed a supplemental motion for summary judgment which added an additional ground for no-evidence summary judgment and an additional ground for traditional summary judgment. On January 28, 2008, a final summary judgment was filed that ordered that McGregor take nothing by its claims against Denman. The summary judgment entered did not specify which of the various grounds put forth by Denman was relied upon by the court. McGregor is appealing the granting of the summary judgment.

McGregor's brief basically contends that the trial court erred in granting a motion for summary judgment upon any of the grounds alleged in the motions. Accordingly, we will review all of the theories put forth by Denman. See W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005) ("Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious.").

Standard of Review

We review the granting of a summary judgment, either traditional or no evidence, *de novo*. See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., 300 S.W.3d 740, 743

---

[5] See TEX. R. CIV. P. 166a(i).

[6] See TEX. R. CIV. P. 166a(c).

4

(Tex. 2009).  We review the evidence in the light most favorable to the non-movant and resolve all doubt and indulge every reasonable inference against movants.  See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

The party moving for a traditional summary judgment has the burden of conclusively establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c);[7] Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005).  A defendant's motion for summary judgment should be granted if the defendant disproves at least one essential element of the plaintiff's causes of action.  See Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004).  Further, if the summary judgment evidence establishes all elements of an affirmative defense as a matter of law, then summary judgment for the defendant is proper.  See Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001).

In order to prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence of one or more essential elements of the claim or claims that the non-movant has the burden to prove at trial. Rule 166a(i).  A no-evidence motion for summary judgment will be sustained when 1) there is complete absence of evidence of a vital fact, 2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove an essential element of the claim, 3) the evidence offered to prove a vital fact is no more than a mere scintilla, or 4) the evidence conclusively establishes the opposite of the vital fact.  King Ranch, Inc. v.

---

[7] Further reference to the Texas Rules of Civil Procedure will be by reference to "Rule ___" or "rule ___."

<u>Chapman</u>, 118 S.W.3d 742, 751 (Tex. 2003). Once the no-evidence motion for summary judgment is filed, the non-movant must then present more than a scintilla of probative evidence to raise a genuine issue of material fact. <u>See</u> <u>Forbes Inc. v. Granada Biosciences, Inc.</u>, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence is found when the evidence is enough to allow reasonable and fair-minded people to differ in their conclusions. <u>Id</u>.

Breach of Contract and Implied Warranties

Amid the numerous claims of McGregor against Denman are claims that Denman breached its contract with McGregor. Denman argues that it had no contract with McGregor, and the only contract it had on the Lubbock project was with Hicks. McGregor responded that it is a third party beneficiary of the contract between Hicks and Denman and, further, the contract between Hicks and Denman contains language that provides that Denman is directly obligated to McGregor. The contractual language at issue is found in the contract between Hicks and Denman and is set out below.

> SUBCONTRACT WORK To the extent terms of the agreement between Owner and Contractor (prime agreement) apply to the work of Subcontractor, Contractor assumes toward Subcontractor all obligations, rights, duties and redress that Owner assumes toward Contractor. In an identical way, Subcontractor assumes toward Contractor all obligations, rights, duties and redress that Contractor assumes toward Owner and others under the prime agreement.

The language of the contractual provision quoted above sets forth the relationship between the Contractor (Hicks) and the Subcontractor (Denman) by reference to the relationship between the Owner (McGregor) and the Contractor (Hicks). As such, there is no clear intention to create third party beneficiary status for McGregor.

6

See Corpus Christi Bank & Trust v. Smith, 525 S.W.2d 501, 503-04 (Tex. 1975) (holding that it is presumed the parties contracted for themselves unless it clearly appears that the contract intended to grant third party beneficiary status to another). To ascertain the intent of the parties, we look at the entire agreement. Our review of the contract at issue, the contract between Hicks and Denman, reveals nothing that supports the position of McGregor. This contract is simply a standard Associated General Contractors of America short form agreement between the contractor and subcontractor. Nothing contained therein reveals any clear intention to create a third party beneficiary in favor of McGregor. This leaves us with the general proposition that, absent such clear intention, we will fall back on the general presumption against third party beneficiary status. See Raymond v. Rahme, 78 S.W.3d 552, 561 (Tex.App.—Austin 2002, no pet.). Accordingly, we hold that the contract between Hicks and Denman did not grant to McGregor the third party beneficiary status to enforce that contract.

However, McGregor contends that, the contract between Hicks and Denman aside, it had a direct contractual relationship with Denman. This is so, according to McGregor, because it made the final payment for the Lubbock project directly to Denman after Hicks was terminated on that project. The record reflects that, after Hicks was terminated on April 1, 2002, Denman submitted its final bill to McGregor directly on April 18, 2002, and McGregor paid the bill on or about May 14, 2002. Under the terms of the contract between Hicks and Denman, any termination of the Contractor (Hicks) by McGregor also terminated the subcontract that Denman had with Hicks. Upon termination of Hicks' contract with McGregor, Denman was contractually bound, after

7

notice of termination of the Contractor, to cease working on the contract. In this case, the work was complete and the only matter remaining, according to the record, was the final payment to Denman. This was the subject matter of the final invoice of April 18, 2002. The record contains nothing regarding any assignment of the contract between Hicks and Denman nor does it contain any information about the terms of any alleged contract between Denman and McGregor that arose as a result of McGregor's termination of Hicks. Rather, McGregor simply asserts that, because the final invoice was sent directly to McGregor and was paid directly to Denman, the two had entered into a contract. Without more, we are asked to imply a contract. Yet, nothing in the record provides the terms of said contract. The payment was nothing more than the final act of the Subcontractor under the previously existing contract. Accordingly, the trial court did not commit error in granting Denman's no-evidence motion for summary judgment regarding the existence of a contract between McGregor and Denman. Because there is no contract between McGregor and Denman, it follows that Denman could not have breached any expressed warranties that might exist in the contract between McGregor and Hicks.

McGregor contends that Denman breached its common law duty to perform its work in a good and workmanlike manner. Denman replies that it did not owe such a duty to McGregor. A review of the opinions of the intermediate courts of appeal in Texas regarding the question of implied warranties between the owner of a property and a subcontractor reveals that our sister courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct contractual relationship. See Schambacher v. R.E.I. Electric, Inc., No. 2-09-345-CV,

8

2010 Tex. App. LEXIS 6426, at *9 (Tex.App.—Fort Worth Aug. 5, 2010, no pet.)(mem. op., not designated for publication); J.M. Krupar Constr. Co. v. Rosenberg, 95 S.W.3d 322, 332 (Tex.App.—Houston [1st Dist.] 2002, no pet.); Codner v. Arellano, 40 S.W.3d 666, 672-74 (Tex.App.—Austin 2001 no pet.). This is because McGregor has a remedy by its suit against Hicks, who could then bring an action against Denman. Therefore, there is no need to imply a warranty in favor of McGregor directly to Denman. See Codner, 40 S.W.3d at 672.

The record before this Court convinces us that Denman and Nance are entitled to summary judgment as a matter of law on the issues of breach of contract and breach of express and implied warranties. See Rule 166a(c); Browning, 165 S.W.3d at 344. Accordingly, McGregor's issues regarding breach of contract and express and implied warranties are overruled.

## Negligence

McGregor alleges in its petition that Denman negligently performed its work as a subcontractor. Denman replies that, since this was a contractual relationship, McGregor to Hicks and then Hicks to Denman, it only owed duties pursuant to the contract with Hicks and not duties relating to tort law. To support this proposition, Denman cites the Court to Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986). Pursuant to the Jim Walter Homes opinion, Denman contends that the loss McGregor is suing for is economic loss directly related to the subject matter of the contractual relationships between the parties and, therefore, is not a viable subject for a tort action. Id. This is known as the economic loss rule.

9

The subject matter of the economic loss rule was recently revisited by the Texas Supreme Court in the case of Sharyland Water Supply Corp. v. City of Alton, No. 09-0223, 2011 Tex. LEXIS 805, at *25-*27 (Tex. Oct. 21, 2011).  In Sharyland, the Texas Supreme Court held that the economic loss rule applied only in cases involving defective products or failure to perform a contract.  Id. at *25.  Further, the court held that those losses were more appropriately addressed through statutory warranty actions or common law breach of contract suits.  Id.  After discussing all aspects of the economic loss rule, the Supreme Court found that the sewer lines in question in Sharyland were, in fact, damaged and, therefore, the economic loss rule did not operate to prohibit recovery on the city's negligence claim.  Id. at *33.

McGregor's cause of action is one for breach of contract.  In the original petition, McGregor claimed this cause of action against Hicks, with whom McGregor had privity of contract, and Denman.  The cause of action outlined by McGregor in its original petition sets forth a claim for monetary damages due to Hicks's breach of contract.  Therefore, as far as the attempted common law action for negligence against Denman, we hold that the economic loss rule would prevent McGregor from maintaining a cause of action against Denman.  Id.  Accordingly, the trial court did not err in granting a summary judgment for Denman and Nance on this issue.  See Rule 166a(c); Browning, 165 S.W.3d at 344.

Fraud and Civil Conspiracy

The vast majority of McGregor's brief is consumed with attempting to show the existence, through circumstantial evidence, of a civil conspiracy to commit fraud by

10

Hicks and Denman. It is at this cause of action that the majority of Denman's no-evidence motion for summary judgment is directed.

The Texas Supreme Court has spoken about the elements of a civil conspiracy claim on a number of occasions. In Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854 (Tex. 1968), Chief Justice Calvert set forth the elements as follows, "A conspiracy to defraud on the part of two or more persons means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and each has the understanding that the other has that purpose." Id. at 857. Later, the Supreme Court addressed the issue again in Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667 (Tex. 1998),the court refined the elements of a conspiracy theory as: 1) a combination of two or more persons; 2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); 3) a meeting of minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result. Id. at 675. Both Schlumberger and Ins. Co. of N. Am. point out that there must be a meeting of the minds on the object and purpose of the conspiracy. Schlumberger, 435 S.W.2d at 857; Ins. Co. of N. Am., 981 S.W.2d at 675. It is the element of a meeting of the minds, or as Denman states it, the knowledge of the conspiracy, that Denman's no-evidence motion is aimed at.

Initially, McGregor contends that the bid for the Lubbock Ashmore Inn addition was as a result of bid rigging which, McGregor alleges, was just the first step in the conspiracy between Hicks and Denman. To support this contention, McGregor submitted the affidavit of Paul McGregor. However, all that the affidavit can be said to

11

aver is that Paul McGregor did not know the total contents of the second bid at the time the contract was awarded. The second bid was not simply $200 less than the bid submitted by the other subcontractor because, on the face of the bid, was 1) the exclusion of tape, bed, and texture, and 2) the requirement that the bid as submitted was based upon the availability of space at the Ashmore Inn for the employees of Denman. There is no evidence that these matters were not submitted to McGregor's agent, Hicks, or that Denman had any knowledge that the proposals were not submitted to McGregor by Hicks. In fact, the summary judgment evidence established that the bid, as stated above, was submitted to Hicks by Denman.

McGregor then continues by stating that, "Clearly, the lower bid by [Denman], was the result of bid shopping or bid peddling by Hicks and Nance." However, nowhere in the summary judgment evidence do we find any evidence that Denman or its President, Nance, had any knowledge of the previous bid of the other subcontractor. Such knowledge is an element of bid shopping or bid peddling. See Sipco Servs. Marine Inc. v. Wyatt Field Serv. Co., 857 S.W.2d 602, 606 (Tex.App.—Houston [1st Dist.] 1993, no writ). McGregor continues this theme with the allegation that it was not until August 5, 2003, that it learned of the per diem allowance. Despite when McGregor alleges it first learned of the per diem allowance, the bid Hicks accepted was made conditioned upon the ability of Denman's employees being able to stay at the Ashmore Inn. McGregor produced no evidence that Denman had any knowledge that McGregor's general contractor, Hicks, had not shown the contract to McGregor or that Denman was in any way involved in keeping the information from McGregor.

12

In an effort to demonstrate some sort of continuing conspiracy, McGregor makes several references to an alleged no bid contract that Denman received in regards to the Amarillo Ashmore project. While admitting that the Amarillo project was a part of this suit and, later, an arbitration involving the Amarillo claims that resulted in an arbitrator's award against McGregor, McGregor contends it offers this evidence only as more circumstantial evidence of the conspiracy. The problem with McGregor's position is two-fold. First, that lawsuit was severed and a Rule 11 agreement was eventually entered that said the Amarillo claims would not be subject to re-litigation in the Lubbock Ashmore lawsuit. Second, and more importantly, the record is clear that the arbitrator found against McGregor in the Amarillo Ashmore arbitration. Implied in that finding is the fact that the arbitrator found that Denman's receipt of the Amarillo contract was not the result of any conspiracy by Hicks and Denman to award the contract without any other bids. With that, we fail to see how the allegation of alleged misdeeds by Denman in Amarillo raises more than a scintilla of evidence regarding the Lubbock Ashmore project. Additionally, the record that McGregor says supports its claim of some sort of a secret agreement between Hicks and Denman that tied the Lubbock and Amarillo projects together is nothing more than a letter confirming what the bid that was submitted says and was sent from Denman to Hicks. Again, McGregor is claiming a conspiracy not because of anything Denman did but rather because Paul McGregor was not informed of the letter by his general contractor. However, there is nothing to show that Denman knew that McGregor did not see this letter or that Denman attempted to hide anything from McGregor.

13

Finally, McGregor's issue of the alleged fraudulent kickback and gratuity boils down to two elements. First, McGregor contends that David Nance affirmatively represented that Denman gave a cruise to Donald Hicks and his family before the contract for the Lubbock addition to the Ashmore Inn was signed. However, the record belies that contention. The summary judgment proof offered by McGregor on this issue was the testimony of Nance during the arbitration hearing. At that time, Nance was asked, "And when was that?" in reference to when Hicks was given the cruise. To which Nance answered, "I don't know the specific date of that." Two questions later, the question was asked, "Would it [the gift of the cruise] be before the Amarillo contract was signed?" To this question, Nance answered, "I do not know." From this exchange, McGregor contends that the record shows the cruise was part of a kickback scheme, and that this exchange is more than a scintilla of evidence regarding the existence of that scheme. However, the answers provided by Nance simply stated that on the day he was asked about the timing of the gift, Nance did not know the exact dates. Prior to the trial court's ruling on the motions for summary judgment and as part of Denman's summary judgment evidence, Denman produced an affidavit of David Nance that categorically denies that the gift of the cruise was given to Donald Hicks during any period covered by the Lubbock or Amarillo contracts. Nance produced receipts showing that the cruise was ordered and paid for on June 9, 2002. The summary judgment evidence also shows that Hicks was terminated by McGregor on April 1, 2002. Nothing, other than the speculation of McGregor, connects the gift of the cruise to any actions taken regarding any bid or contract.

14

McGregor contends that the statements made by an alleged co-conspirator, Billy Hicks, to Paul McGregor regarding what David Nance had allegedly told Billy Hicks is proof of the conspiracy. To support this theory, McGregor cites the Court to Texas Rule of Evidence 801(e)(2)(E)[8] for the proposition that Billy Hicks's discussion of what David Nance allegedly told him was in furtherance of the conspiracy and, therefore, not hearsay. See TEX. R. EVID. 801(e)(2)(E). The rule states that:

> (e) Statements which are not hearsay. A statement is not hearsay if:
>
> (2) Admission by party-opponent. The statement is offered against a party and is:
>
> (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

TEX. R. EVID. 801(e)(2)(E).

McGregor's contention fails because the rule has been interpreted to mean that there must be evidence to establish a prima facie case of conspiracy separate and apart from the otherwise hearsay statements. See Utica Nat'l Ins. Co. of Tex. v. McDonald, 814 S.W.2d 234, 236 (Tex.App.—Fort Worth 1991, writ denied). In Utica, the insured's brother was prepared to give testimony about what his brother told him to do regarding setting fire to the insured home. The trial court sustained a hearsay objection and, on appeal, Utica claimed that the statement was admissible, pursuant to TEX. R. CIV. EVID. 801(e)(2)(E), as the statement of a co-conspirator during the course and in furtherance

---

[8] McGregor actually cites the Court to the Texas Rules of Criminal Evidence, which were later combined with the Texas Rules of Civil Evidence into the Texas Rules of Evidence.

of the conspiracy.[9]  The Fort Worth court affirmed, saying the lack of any tangible, material evidence of a conspiracy means the statement was not admissible as an exception to the hearsay rule.  Id.  When interpreting Texas Rule of Criminal Evidence 801(e)(2)(E), the Texas Court of Criminal Appeals held that, before the alleged exception to the hearsay rule becomes admissible, the State must first show that the conspiracy existed.[10]  Guidry v. State, 9 S.W.3d 133, 148 (Tex.Crim.App. 1999).  In this case, McGregor is attempting to use the alleged statement to prove the conspiracy exists without other proof of the conspiracy.  The summary judgment record reveals that Denman objected to this type of speculative testimony contained in Paul McGregor's affidavit and, therefore, that the hearsay testimony was not proper summary judgment evidence.  See King Ranch, 118 S.W.3d at 751 (specifically in that the trial court was barred from giving weight to the only "evidence" offered to prove a vital fact).

In the final analysis, there is nothing more than mere suspicion on the part of Paul McGregor to support the allegation of a civil conspiracy to commit fraud between Hicks and Denman.  When appellant's evidence consists of nothing more than suspicion, conclusory statements, speculation, and improbable inferences, summary judgment is proper.  See Ptomey v. Texas Tech Univ., 277 S.W.3d 487, 497-98 (Tex.App.—Amarillo 2009, pet. denied).  Accordingly, the trial court's ruling in granting

---

[9] The Texas Rule of Civil Evidence 801(e)(2)(E) read the same as Texas Rule of Evidence 801(e)(2)(E).

[10] Texas Rule of Criminal Evidence 801(e)(2)(E) read the same as Texas Rule of Evidence 801(e)(2)(E).

16

Denman's no-evidence motion for summary judgment regarding McGregor's action for civil conspiracy and fraud was correct.

## Conclusion

Having overruled each of McGregor's issues, the trial court's granting of the summary judgment is affirmed.

Mackey K. Hancock
Justice