**REVERSE and REMAND; and Opinion Filed July 8, 2015.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

————————————————

### No. 05-14-00831-CV

————————————————

**DALLAS DRAIN COMPANY, INC. AND KEVIN TRAVIS, Appellants**
**V.**
**KEVIN D. WELSH AND KELLY A. WELSH, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-09129**

# MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

The trial court granted summary judgment in favor of appellees Kevin D. Welsh and Kelly A. Welsh on their claims against appellants Dallas Drain Company, Inc. and Kevin Travis. Dallas Drain and Travis appeal the summary judgment, and Dallas Drain appeals the denial of its motion to extend post-judgment deadlines. In six issues on appeal, appellants assert: (1) because appellees' motion for summary judgment on their negligence and breach of implied warranty claims was supported only by an improper deemed admission, the trial court erred by finding appellees met their summary judgment burden; (2) no summary judgment evidence establishes appellants are builders and, therefore, the trial court erred by granting summary judgment on appellees' breach of implied warranty claims; (3) appellees failed to support their breach of implied warranty of habitability claim with summary judgment evidence that the dwelling at issue was not habitable; (4) the trial court erred by finding appellees conclusively established

entitlement to attorney's fees incurred in prosecuting their negligence and breach of implied warranty claims; (5) the trial court erred by finding appellees conclusively established that Travis is personally liable for claims against Dallas Drain for negligence and breach of implied warranties; and (6) the trial court erred by denying Dallas Drain's motion to extend post-judgment deadlines. We reverse the trial court's judgment and remand this cause to the trial court.

## Background

### *Appellees' Allegations*

This is a construction defect liability case. Appellees, owners of a residence located at 3317 Dartmouth Avenue in Highland Park, Texas (the residence), sued Sharif & Munir Enterprises, Inc., the builder of the residence; Dallas Drain, a subcontractor; and Travis, president and director of Dallas Drain. Appellees allege that during the construction of the residence, Sharif and "one of its subcontractors" incorrectly connected a sump pump providing basement and elevator drainage to the sanitary sewer line.

According to appellees' pleading, Sharif built the residence sometime after 2000. The original owner of the residence sold the residence in 2008; those purchasers sold the residence to the entity from which appellees purchased the residence in 2013. Shortly after purchasing the residence, appellees learned the sanitary sewer line to the residence had settled and sagged causing the sewer line to back up. A plumber hired to rectify the sagging sewer line discovered the sump pump was improperly connected to the sewer line, instead of properly connected to the storm water drainage system. Appellees allege the connection of the sump pump to the sanitary sewer line violated a Highland Park ordinance. Appellees allege they have undertaken repairs by connecting the sump pump directly to the storm water drainage system.

In their live pleading, appellees allege Dallas Drain negligently breached a duty to perform work in a good and workmanlike manner by improperly connecting the sump pump to the sanitary sewer line, which proximately caused appellees' damages. Appellees also allege that Dallas Drain's improper connection of the sump pump to the sanitary sewer line was a breach of the implied warranties of good and workmanlike construction and habitability which proximately caused their damages. Appellees allege Dallas Drain forfeited its corporate privileges on January 28, 2011, without its corporate privileges having been revived, and that Travis, as president and a director of Dallas Drain, is liable under the Texas Tax Code for a judgment against Dallas Drain that constitutes a "debt" of Dallas Drain. Appellees seek actual and exemplary damages and attorney's fees.

*Procedural Background*

Appellees filed suit on August 15, 2013 against Sharif, Dallas Drain, and Travis. Sharif was non-suited by appellees after he filed an answer. Dallas Drain and Travis were served with appellees' Original Petition and written discovery (requests for disclosure, requests for production, interrogatories, and requests for admissions). Travis, as president of Dallas Drain, filed a pro se answer on behalf of appellants. By letter to Travis, the trial court advised him that he could not represent the corporate entity Dallas Drain and would need to "obtain an attorney to represent this company in any hearing that may be scheduled, and during trial." *See KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894, 896 (Tex. App.—Dallas 2003, no pet.) (only a licensed attorney can appear and represent a corporation in litigation).

Appellees filed a motion for summary judgment on their claims against appellants. No response to the motion for summary judgment was filed by appellants. On February 26, 2014, the trial court signed the Order Granting Summary Judgment and Final Judgment in favor of

appellees, awarding appellees damages, attorney's fees, court costs, and pre-judgment and post-judgment interest.

On April 28, 2014, Dallas Drain and Travis, represented by counsel, filed a motion to extend post-judgment deadlines under rule 306a of the rules of civil procedure and a motion for new trial. By order signed June 16, 2014, the trial court granted Travis's motion to extend post-judgment deadlines and motion for new trial and denied Dallas Drain's motion to extend post-judgment deadlines.[1] On June 25, 2014, Dallas Drain and Travis jointly filed their notice of appeal of the trial court's February 26, 2014 order granting summary judgment and final judgment and the trial court's June 16, 2014 order denying Dallas Drain's motion to extend post-judgment deadlines.

## Appellate Jurisdiction of Dallas Drain's Appeal

In its sixth issue, Dallas Drain asserts the trial court erred by denying its motion to extend post-judgment deadlines under rule of civil procedure 306a. Appellees respond that this Court lacks jurisdiction over Dallas Drain's appeal because the trial court's denial of Dallas Drain's motion to extend post-judgment deadlines under rule 306a is not separately appealable and, therefore, Dallas Drain's deadline to file its notice of appeal passed before Dallas Drain filed its notice of appeal.[2] Because this issue concerns this Court's jurisdiction over Dallas Drain's appeal, we consider it prior to consideration of the other issues raised on appeal.

On April 28, 2014, appellants filed a motion for new trial and a motion to extend post-judgment deadlines under rule of civil procedure 306a, asserting they did not receive notice from

---

[1] The appellate record contains no reporter's record. The clerk's record reflects that a hearing on Dallas Drain and Travis's motion to extend post-judgment deadlines was scheduled for June 16, 2014.

[2] Following the filing of Dallas Drain's notice of appeal, we forwarded correspondence to Dallas Drain and Travis's attorney questioning our jurisdiction over Dallas Drain's appeal and requesting that Dallas Drain file a jurisdictional letter brief addressing the timeliness of its notice of appeal. Dallas Drain filed a letter brief addressing the jurisdictional question, as did appellees. After receipt of the jurisdictional letter briefs, we communicated to the parties that resolution of the issue of appellate jurisdiction over Dallas Drain's appeal was deferred to the submission of this appeal.

the trial court or acquire actual knowledge of the February 26, 2014 order granting summary judgment until March 27, 2014, and consequently, the time period during which the trial court could employ its plenary power to modify, alter, or vacate the final judgment and appellants' could file post-judgment motions referenced in rule 306a did not begin to run until March 27, 2014. *See* TEX. R. CIV. P. 306a(3), (4) (if party affected by judgment or other appealable order has not, within twenty days after the order was signed, either received notice required by rule of civil procedure 306a(3) or acquired actual knowledge of the order, then any period that, under the rules of appellate procedure, runs from the signing of the order will begin on the earlier of the date when the party receives notice or acquires actual knowledge of the signing; no such period may begin to run more than ninety days after the judgment or order was signed); TEX. R. APP. P. 4.2(a)(1). On June 16, 2014, the trial court signed an order granting Travis's motion to extend the post-judgment deadlines which provided: Travis did not receive actual notice of the order granting summary judgment and final judgment against him until March 27, 2014; the time period in which the trial court could exercise its plenary power as provided under rule 306a(1) and Travis could file post-judgment motions listed in rule 306a(1) did not begin to run until March 27, 2014; and Travis's April 28, 2014 motion for new trial was timely filed. Although Dallas Drain's motion to extend post-judgment deadlines and motion for new trial were based on the same operative facts as Travis's motions to extend post-judgment deadlines and motion for new trial, in its June 16, 2014 order, the trial court denied Dallas Drain's motion to extend post-judgment deadlines.[3]

We need not determine whether the appellate timetable was extended as to Dallas Drain based on the trial court's purported error in denying its motion to extend post-judgment deadlines under rule 306a of the rules of civil procedure, because Dallas Drain's notice of appeal was

---

[3] The June 16, 2014 order does not specifically address whether the trial court found Dallas Drain's motion for new trial to be timely.

–5

timely under rule of appellate procedure 26.1(d). Under rule of appellate procedure 26.1(d), if any party timely files a notice of appeal, another party may file a notice of appeal within fourteen days after the first filed notice of appeal. TEX. R. APP. P. 26.1(d); *Gonzales v. Hi Plains Hosp.*, No. 07-03-0264-CV, 2003 WL 21658321, at *1 (Tex. App.—Amarillo July 15, 2003, no pet.) (per curiam). Following the trial court's June 16, 2014 order granting Travis's motion to extend post-judgment deadlines, Travis filed his notice of appeal on June 25, 2014. Appellees do not contend Travis's notice of appeal was untimely.

On June 25, 2014, Dallas Drain and Travis jointly filed their notice of appeal of the trial court's February 26, 2014 order granting summary judgment and final judgment and the trial court's June 16, 2014 order denying Dallas Drain's motion to extend post-judgment deadlines. Because Dallas Drain's notice of appeal was timely under rule of appellate procedure 26.1(d) as having been filed within fourteen days of Travis's notice of appeal, we conclude this Court has jurisdiction over Dallas Drain's appeal.

## Summary Judgment Standard of Review

We apply well known standards in our review of traditional summary judgment motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.—Dallas 2003, no pet.). We credit evidence favorable to the nonmovant if a reasonable fact-finder could, and we disregard evidence contrary to the nonmovant unless a reasonable fact-finder could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within this framework, we review the trial

court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

## Evidence of Elements of Appellees' Claims

In their first issue, appellants argue the trial court erred in granting appellees' traditional summary judgment because appellees did not meet their summary judgment burden by adducing evidence establishing each element of their claims. Specifically, appellants assert that appellees' motion for summary judgment on their negligence and breach of implied warranty claims was supported only by a deemed admission "that all the allegations of [appellants'] Original Petition are true." Appellees argue that, as to their negligence and breach of implied warranty claims, "the deemed admissions are good and appropriate summary judgment evidence."

### Merits-Preclusive Deemed Admission

Neither Dallas Drain nor Travis served answers to appellees' requests for admissions, and the requests are deemed admitted. *See Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811–12 (Tex. App.—Waco 2007, no pet.); *see also* TEX. R. CIV. P. 198.2(c). In their motion for summary judgment, appellees asserted with regard to Dallas Drain's liability for negligence and breach of implied warranties of workmanship and habitability, that the issue was whether Dallas Drain was liable to them "by virtue of [its] deemed admissions."[4] Appellees asserted they were entitled to summary judgment on their claims because there are no genuine issues of material fact with regard to the following:

1.      [Appellants] were served with a lawsuit by [appellees];

2.      [Appellants] were served with discovery with citation;

3.      That discovery included, *inter alia*, requests for admission;

---

[4] We question whether appellees moved for summary judgment on their breach of implied warranty of habitability claim; the motion for summary judgment asserted an entitlement to summary judgment on appellees' claims of negligence and breach of implied warranty of "good workmanship" only. However, the trial court's order granting summary judgment and final judgment granted appellees' motion for summary judgment "as to all of [appellees'] claims against [appellants]." In this opinion, we address the summary judgment evidence in support of alleged claims of negligence, breach of implied warranty of workmanship, and breach of implied warranty of habitability.

4. [Appellants] appeared in this action through the filing of an answer;

\* \* \*

6. [Appellants'] admissions constitute sufficient admissions to warrant granting summary judgment in favor of [appellees];

7. Dallas Drain has forfeited its existence;

8. Travis is liable for Dallas Drain's misconduct;

9. [Appellees] own the [residence];

10. [Appellees] incurred $99,559.64 in repairs to correct the [sic] render Dallas Drain's installation code compliant;

11. [Appellees] incurred attorneys' fees in prosecuting this action.

Appellees relied on deemed admissions to the following requests for admission to Dallas Drain as summary judgment evidence:

3. Admit that you knew that the sump pump was connected to the sanitary sewer before January 1, 2013.

4. Admit that the all [sic] of allegations of [appellants'] Original Petition are true.

5. Admit that [Dallas Drain] forfeited its existence on January 28, 2011.

Appellees relied on deemed admissions to the following requests for admission to Travis as summary judgment evidence:

3. Admit that you knew that the sump pump was connected to the sanitary sewer before January 1, 2013.

4. Admit that the all [sic] of allegations of [appellees'] Original Petition are true.

5. Admit that [Dallas Drain] forfeited its existence on January 28, 2011.

6. Admit that you are an officer of [Dallas Drain].

7. Admit that you are a director of [Dallas Drain].

"By virtue of [Dallas Drain's] deemed admission" to Request for Admission No. 4 that the allegations of appellees' Original Petition are true, appellees asserted in their motion for summary judgment that: Dallas Drain warranted good and workmanlike construction; Dallas Drain routed surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system; Dallas Drain's routing of surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system, breached implied warranties of good and workmanlike construction; and Dallas Drain's routing of surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system, proximately caused their damages.

"Generally, pleadings are not competent evidence, even if sworn or verified." *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). "Pleadings outline the issues, but they are not evidence." *Shawell v. Pend Oreille Oil & Gas Co.*, 823 S.W.2d 336, 338 (Tex. App.—Texarkana 1991, writ denied). Therefore, any averments contained in pleadings are not proper summary judgment evidence and will not sustain a summary judgment. *Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 880 (Tex. App.—Beaumont 2007, pet. denied). However, "[d]eemed admissions may be employed as proof, and once admissions are deemed admitted by operation of law and where the admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon." *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 838 (Tex. App.—Dallas 2009, no pet.). "[U]nanswered requests for admissions are deemed admitted without the necessity of a court order and any matter thus admitted is conclusively established as being true." *Id*. Therefore, facts admitted through deemed admissions "may not be contradicted by evidence at the trial." *Id*.

Although admissions of fact on file at the time of a summary judgment hearing are proper summary judgment proof and will support a motion for summary judgment, *see* TEX. R. CIV. P. 166a(c), a request for admission asking a party to admit or deny a purely legal issue is improper, and a deemed admission involving a purely legal issue is of no effect. *Whitehead*, 253 S.W.3d at 880; *Boulet v. State*, 189 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858–59 (Tex. App.—Texarkana 1992, writ denied); *see also Esparza v. Diaz*, 802 S.W.2d 772, 775 (Tex. App.—Houston [14th Dist.] 1990, no writ). This is so because the primary purpose of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy. *See Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996). A request for admission "was never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." *Id.* (citing former rule 169 of the rules of civil procedure; quoting *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 208 (1950)).

Appellees' motion for summary judgment stated there is no genuine issue of material fact that appellants "appeared in this action through the filing of an answer." In their answer, appellants denied liability for appellees' claims. *See Boulet*, 189 S.W.3d at 837 (by virtue of appellant's general denial in his original answer, appellee had been put on notice that appellant disputed a matter later subject of a deemed admission). Despite that denial of liability for appellees' claims, appellees relied on deemed admissions by appellants that appellants are liable to appellees for negligence and breach of implied warranties of workmanship and habitability. Such a reliance is inappropriate, as requests for admissions relating to questions of law are improper, and a deemed admission involving a purely legal issue is of no effect. *See Whitehead*, 253 S.W.3d at 880; *Fort Bend Cent. Appraisal Dist.*, 844 S.W.2d at 858–59; *see also Wheeler v. Greene*, 157 S.W.3d 439, 443 (Tex. 2005) (equating merits-preclusive discovery sanctions with

–10

merits-preclusive deemed admissions for due process purposes); *Boulet*, 189 S.W.3d at 838 (deemed admissions relied upon in motion for summary judgment embraced "the fundamental legal issues to be tried"; when party uses deemed admissions to try to preclude presentation of the merits, constitutional due-process concerns arise); *Gore v. Cunningham*, 297 S.W.2d 287, 291 (Tex. Civ. App.—Beaumont 1956, writ ref'd n.r.e.) (requests for admissions exist "to eliminate in advance of the trial fact issues which would not be in dispute, and . . . the rule does not contemplate or authorize admissions to questions involving points of law," citing 3 McDonald's Texas Civil Practice, ¶ 10.06).

Appellees' motion for summary judgment was based on improper summary judgment evidence in the form of a merits-preclusive deemed admission concerning liability for appellees' claims of negligence and breach of implied warranties of workmanship and habitability. Accordingly, we conclude the merits-preclusive deemed admission failed to prove the elements of appellees' claims of negligence and breach of implied warranties of workmanship and habitability. Consequently, the merits-preclusive deemed admission was not, as argued by appellees, summary judgment evidence that: Dallas Drain warranted good and workmanlike construction; Dallas Drain routed surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system; Dallas Drain's routing of surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system, breached implied warranties of good and workmanlike construction; and Dallas Drain's routing of surface waste water from the residence's sump pump to the sanitary sewer line, as opposed to the storm water drainage system, proximately caused their damages. We resolve appellants' first issue in their favor.

Next, we consider whether there is summary judgment evidence establishing the elements of appellants' causes of action as a matter of law.

Negligence

Appellees argue that appellants did not challenge on appeal the trial court's summary judgment on their negligence claim. We disagree. In their first issue, appellants not only argue that appellees improperly rely on Dallas Drain's deemed admission that the allegations in appellees' Original Petition are true to support their "warranty and negligence claims," they also argue that appellees did not meet their summary judgment burden by adducing evidence that established their claims as a matter of law.

Appellees allege Dallas Drain negligently breached a duty to perform work in a good and workmanlike manner by improperly connecting the sump pump to the sanitary sewer line. To prevail on a negligence cause of action, the plaintiff must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). As pleaded, appellees sought damages for "undertaking to fix what should have been right in the first place." However, under the economic loss doctrine, appellees failed to meet their summary judgment burden by adducing evidence that established their negligence claim as a matter of law.

The economic loss doctrine applies to negligence claims. *See Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.); *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.—Dallas 2003, no pet.); *see also Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.) ("Simply stated, a duty in tort does not lie under the economic loss rule when the only injury claimed is one for economic damages."). "The economic loss rule generally precludes recovery in tort for economic losses

–12

resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.*; *see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (suggesting that the source of the duty and the nature of the wrong should be examined to determine whether the underlying claim is in tort or contract).

Appellees allege subcontractor Dallas Drain's duty, undertaken in its contract with Sharif, was to properly connect the sump pump to the storm water drainage system, and the damages allegedly incurred for Dallas Drain's breach of that duty was for routing the surface waste water from the sump pump to the existing storm water drainage system. Thus, there was no alleged personal injury or damage to other property that would have permitted appellees to assert a tort claim that would be excepted from the economic loss doctrine. *See Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Appellees' negligence cause of action against subcontractor Dallas Drain is barred by the economic loss doctrine. Accordingly, we conclude appellees failed to carry their burden of establishing they were entitled to judgment as a matter of law on their negligence claim. For this additional reason, we resolve appellants' first issue with regard to appellees' negligence claim in appellants' favor.

Implied Warranties of Workmanship and Habitability

In their second issue, appellants argue there is no summary judgment evidence that Dallas Drain or Travis are builders and, therefore, the trial court erred by granting summary judgment in favor of appellees on their breach of implied warranty of workmanship and habitability claims. Appellees acknowledge they did not allege either Dallas Drain or Travis was a builder.

–13

However, appellees assert Dallas Drain admitted it breached an implied warranty of workmanship through the deemed admission of appellees' allegation that it improperly connected the sump pump to the sanitary sewer line.

In their third issue, appellants assert the trial court erred by granting summary judgment on appellants' common law breach of implied warranty of habitability claim, because the summary judgment evidence does not establish the residence is so defective that it is unsuitable for use as a dwelling. Appellees acknowledge their only summary judgment evidence in support of this claim is the affidavit of appellee Kelly A. Welsh in which she attested the City of Highland Park required remediation of the routing of surface water from the residence's sump pump to the sanitary sewer line and that, "[o]therwise, [a]ppellants are correct that there was no summary judgment evidence that proves [the residence] was uninhabitable."

"Through the implied warranty of good workmanship, the common law recognizes that a new home builder should perform with at least a minimal standard of care." *Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002). "This implied warranty requires the builder to construct the home in the same manner as would a generally proficient builder engaged in similar work and performing under similar circumstances." *Id.*; *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 461 (Tex. App.—Dallas 2013, pet. denied). "The implied warranty of good workmanship serves as a 'gap-filler' or 'default warranty'; it applies unless and until the parties express a contrary intention." *Buecher*, 95 S.W.3d at 273. "Thus, the implied warranty of good workmanship attaches to a new home sale if the parties' agreement does not provide how the builder or the structure is to perform." *Id.*

"The implied warranty of habitability, on the other hand, looks only to the finished product." *Id.* "This implied warranty is more limited in scope, protecting the purchaser only from those defects that undermine the very basis of the bargain." *Id.* "It requires the builder to

–14

provide a house that is safe, sanitary, and otherwise fit for human habitation." *Id*. "In other words, this implied warranty only protects new home buyers from conditions that are so defective that the property is unsuitable for its intended use as a home." *Id*. at 273, 274. "As compared to the warranty of good workmanship, 'the implied warranty of habitability represents a form of strict liability since the adequacy of the completed structure and not the manner of performance by the builder governs liability.'" *Id*. at 273 (citing Davis, *The Illusive Warranty of Workmanlike Performance: Constructing a Conceptual Framework*, 72 NEB. L. REV. 981, 1015 (1993)). While the implied warranty of good workmanship focuses on the builder's conduct, the implied warranty of habitability focuses on the state of the completed structure. *Id*. at 272–73.

Texas courts have consistently held that a property owner may not recover under an implied warranty theory from a subcontractor with whom the owner had no direct contractual relationship. *See P. McGregor Enters., Inc. v. Hicks Constr. Grp., LLC*, 420 S.W.3d 45, 50–51 (Tex. App.—Amarillo 2012, no pet.) ("A review of the opinions of the intermediate courts of appeal in Texas regarding the question of implied warranties between the owner of a property and a subcontractor reveals that our sister courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct relationship."); *Pugh*, 243 S.W.3d at 89 (property owner may not recover under implied warranty theory from subcontractor with whom owner had no contractual relationship); *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 21 (Tex. App.—Fort Worth 2002, no pet.) (holding plaintiff's implied warranty claim against subcontractor was barred as a matter of law); *Raymond v. Rahme*, 78 S.W.3d 552, 563 (Tex. App.—Austin 2002, no pet.) (noting that, because property owner has recourse against general contractor with whom he contracted, "there is no compelling public policy reason to impose an implied warranty against a subcontractor," and holding evidence legally insufficient to support a finding of implied warranty of good and workmanlike conduct

between subcontractor and property owner); *J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding homeowner did not have cause of action for common law breach of implied warranty against subcontractor who performed foundation work on home and stating that homeowner's remedy for damages resulting from faulty construction was against general contractor); *Codner v. Arellano*, 40 S.W.3d 666, 672–73 (Tex. App.—Austin 2001, no pet.) ("declin[ing] to apply, as a matter of public policy, an implied warranty . . . between a homeowner and a subcontractor").[5] With regard to appellees' breach of implied warranty of workmanship and habitability claims, there was no summary judgment evidence Dallas Drain or Travis were builders of the residence, such that they owed a duty to appellees.

Further, with regard to appellees' breach of implied warranty of habitability claim against Dallas Drain, an implied warranty of habitability protects new home buyers from conditions that are so defective that the property is unsuitable for its intended purpose as a new home. *Buecher*, 95 S.W.3d at 273. As appellees judicially admit in their pleadings and in Kelly Welsh's affidavit, they were not the original purchasers of the residence. As acknowledged by appellees, there is no summary judgment evidence that the residence was not habitable because the sump pump was improperly connected to the sanitary sewer line, and appellees never alleged their "sagging" sewer line and any backing up of the sewer line was in any way caused by the connection of the sump pump to that line.

There is no summary judgment evidence that Dallas Drain or Travis were builders of the residence, a necessary element of appellees' breach of implied warranty of workmanship and

---

[5] *See also Scheler v. Smith*, No. 05-08-01439-CV, 2010 WL 2978333, at *2 (Tex. App.—Dallas July 30, 2010, no pet.) (mem. op.) (courts presented with question of whether implied warranty exists with respect to subcontractor have held no such warranty exists because the homeowner has a remedy against a general contractor); *Schambacher v. R.E.I. Elec., Inc.*, No. 2-09-345-CV, 2010 WL 3075703, at *4 (Tex. App.—Fort Worth Aug. 5, 2010, no pet.) (mem. op.) ("Regarding breach of implied warranty claims, Texas courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct contractual relationship."); *Glenn v. Nortex Found. Designs, Inc.*, No. 2-07-172-CV, 2008 WL 2078510, at *3 (Tex. App.—Fort Worth May 15, 2008, no pet.) (mem. op.) ("Texas courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct contractual relationship.").

habitability claims. There is also no summary judgment evidence appellees were the original purchasers of the residence or that the residence was not habitable as a result of the sump pump line being improperly connected to the sanitary sewer line, necessary elements of appellees' breach of implied warranty of habitability claim. Appellees, therefore, failed to carry their burden of establishing they were entitled to judgment as a matter of law on their breach of implied warranty of workmanship and habitability claims. Accordingly, we resolve appellees' second and third issues in their favor.

### Attorney's Fees

In its February 26, 2014 order granting summary judgment and final judgment, the trial court ordered Dallas Drain and Travis jointly and severally liable for appellees' attorney's fees in the amount of $20,000, and contingent attorney's fees in the amounts of $10,000 for appellees successfully opposing a bill of review or appeal to the court of appeals, $5,000 in the event a petition for review is filed in the Texas Supreme Court, and $7,500 in the event a petition for review is granted by the Texas Supreme Court. In their fourth issue, appellants contend the trial court improperly awarded appellees attorney's fees as they were not recoverable under either appellees' negligence or breach of implied warranty claims. Appellees argue they are entitled to an award of attorney's fees based on the summary judgment in their favor on their breach of implied warranty of workmanship claim. We review the trial court's decision to grant or deny attorney's fees for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Inwood Nat'l Bank v. Wells Fargo Bank, N.A.*, No. 05-13-01689-CV, 2015 WL 1929251, at *8 (Tex. App.—Dallas Apr. 29, 2015, no pet. h.).

On this record, we have concluded above that summary judgment on appellees' negligence and breach of implied warranty claims was improperly granted; therefore, these

–17

claims cannot support a summary judgment award of appellees' attorney's fees. We resolve appellants' fourth issue in their favor.

### Travis's Liability for Claims Against Dallas Drain

In their fifth issue, appellants assert the trial court erred as a matter of law by rendering judgment that Travis, as an officer or director of Dallas Drain, is personally liable to appellees for unintentional acts of Dallas Drain based on Dallas Drain's forfeiture of its corporate status. Relying on their summary judgment proof that Dallas Drain forfeited its corporate existence on January 28, 2011, and Travis is an officer and director of Dallas Drain, appellees contend Travis is liable for the judgment against Dallas Drain as a corporate "debt" under section 171.255 of the Texas Tax Code.[6]

On this record, we have concluded that summary judgment on appellees' negligence and breach of implied warranty claims was improperly granted; therefore, the claims cannot support a "judgment" constituting a corporate "debt" for which Travis, as a director and officer of Dallas, could be liable. We resolve appellants' fifth issue in their favor.

---

[6] Pursuant to section 171.251 of the Texas Tax Code, the comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation: (1) does not file the required [tax] report within forty-five days of the date the notice of forfeiture is mailed; (2) does not pay the tax imposed within forty-five days of the date the notice of forfeiture is mailed or does not pay within those forty-days a penalty imposed relating to that tax; or (3) does not permit the comptroller to examine the corporate records. *See* TEX. TAX CODE ANN. § 171.251 (West 2015). Under section 171.255, directors and officers may lose their protection from liability provided by the corporate form. *See id*. § 171.255(a); *In re Trammell*, 246 S.W.3d 815, 821–22 (Tex. App.—Dallas 2008, orig. proceeding). If a corporation's corporate privileges are forfeited, each director of officer is liable for each debt of the corporation that is created or incurred in Texas after the date on which the tax report, tax,or penalty is due and before the corporate privileges are revived. *See* TEX. TAX CODE ANN. § 171.255(a); *In re Trammell*, 246 S.W.3d at 821.

## Conclusion

We have jurisdiction over Dallas Drain's appeal. Having resolved appellants' issues in their favor, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

140831F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DALLAS DRAIN COMPANY, INC. AND
KEVIN TRAVIS, Appellants

No. 05-14-00831-CV          V.

KEVIN D. WELSH AND KELLY A.
WELSH, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC13-09129.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants Dallas Drain Company, Inc. and Kevin Travis recover their costs of this appeal from appellees Kevin D. Welsh and Kelly A. Welsh.

Judgment entered this 8th day of July, 2015.